3 F.3d 356
 William L. LORANGER, individually and as surviving son and
sole heir of Carolyn M. Loranger, deceased, and as
personal representative of the estate of
Carolyn M. Loranger, Plaintiff-Appellant,
v.
Merrett STIERHEIM, etc., et al., Defendants,
Stuart Simon, individually and in his former capacity as
county attorney for Metropolitan Dade County, Stanley Price,
individually and in his official capacity as assistant
county attorney for Metropolitan Dade County, Stuart Sobel,
individually and in his official capacity as assistant
county attorney for Metropolitan Dade County, William
POWELL, individually and in his official capacity as
director of the Metropolitan Dade County Public Works
Department and his successors in office, Gonzaldo Gonzalez,
individually and in his official capacity as an employee of
the Public Works Department of Metropolitan Dade County,
Jack Chazen, individually and in his official capacity as
former employee of the Public Works Department of
Metropolitan Dade County, John Doe, individually and in his
(their) official capacity(ies) as employees of Metropolitan
Dade County, and Metropolitan Dade County, a political
subdivision of the State of Florida, Defendants-Appellees.
 No. 88-5179.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 28, 1993.
 
 Michael D. Ray, Neil D. Kolner, Miami, FL, for plaintiff-appellant.
 James J. Allen, Asst. County Atty., Miami, FL, for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before COX, Circuit Judge, JOHNSON, Senior Circuit Judge, and ATKINS*, Senior District Judge.
 JOHNSON, Senior Circuit Judge:
 
 
 1
 William Loranger appeals from the district court's orders denying his motion for recusal and awarding his attorney, Michael D. Ray, approximately five percent of the attorney fees requested under 42 U.S.C.A. Sec. 1988. For the reasons that follow, we affirm the district court's order denying Loranger's motion for recusal but reverse the district court's fee award.
 
 I. STATEMENT OF THE CASE
 
 2
 This appeal arises out of a long-running dispute between Loranger and Dade County, Florida (the "County"), regarding a garden containing a hedge of 30' tall orange jasmine trees situated on property owned by Loranger. Beginning in 1978, and continuing over the next two years, the County issued numerous citations directing Loranger to cut the hedge to 4' or risk having the property bulldozed. Each time Loranger attempted to resolve the dispute, the County issued another citation. Finally, in late 1979, the County dropped all the citations.
 
 
 3
 Shortly after the citations were dropped, the County sued Loranger's then deceased mother, alleging that the jasmine trees were trespassing on a public right of way. See Dade County v. Loranger, Case. No. 79-18605 (Fla.Cir.Ct.). When Loranger contended that service had not been perfected, the County responded in two ways: first, the County's process server swore under oath that he had delivered the summons to Loranger's mother and that he had explained its meaning; second, a County attorney wrote Loranger and stated that if his mother continued to evade service of process, the County would proceed by bulldozing the property. After learning that Loranger's mother had been dead for five years at the time of the alleged service, the County voluntarily dismissed the suit.
 
 
 4
 In early 1980, Loranger sued the County for injunctive relief to prohibit the County from interfering with the garden property. See Loranger v. Dade County, No. 80-198 (Fla.Cir.Ct.). The County counterclaimed for trespass. Loranger then amended his complaint to allege civil rights claims. Before the court could consider the merits of the case, Loranger voluntarily dismissed both his injunctive claim and his civil rights claims. Trial on the counterclaim for trespass resulted in a final judgment in the County's favor.
 
 
 5
 In 1981 Loranger commenced the case giving rise to this proceeding, suing the County as well as numerous County officials (the "County Defendants"), alleging violations of due process, equal protection and first amendment rights, and seeking monetary and injunctive relief. See 42 U.S.C.A. Sec. 1983 (West 1981). Holding that the County Defendants were absolutely immune from suit under Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the district court dismissed Loranger's complaint with leave to amend. Rather than amending his complaint, Loranger moved to vacate the district court's order dismissing the suit. The district court denied Loranger's motion and dismissed Loranger's complaint with prejudice. On appeal, this Court reversed and remanded. See Loranger v. Stierheim, 696 F.2d 1006 (11th Cir.1982). On remand, the district court directed a verdict for the County Defendants on the due process claim and the request for injunctive relief. However, the first amendment and equal protection claims went to the jury, which returned a verdict of $20,000 in favor of Loranger.
 
 
 6
 In December 1985, Loranger's attorney, Michael D. Ray, filed a motion for attorney fees and costs pursuant to 42 U.S.C.A. Sec. 1988. Ray requested attorney fees in the amount of $944,775 (2907 hours X $125/hr + enhancement factor of 1.6) plus $9671.23 in costs. Accompanying Ray's motion was a detailed 82-page summary of the time charged to the case. Ray later supplemented that summary by filing contemporaneous time sheets. The district court did not rule on the motion until January 26, 1988. In a one page order bereft of factual findings, the district court awarded Ray $35,000 in attorney fees and $3181.50 in costs. Loranger immediately appealed. Noting that the district court's order contained no factual findings, the County Defendants requested that this Court relinquish jurisdiction so that the district court could supplement its order. We granted the motion.
 
 
 7
 Ray did not idly await the district court's exposition of its factual findings. Rather, Ray first filed a suggestion for en banc review by the other judges of the Southern District of Florida of the district court's initial fee award, arguing that the award amounted to an "unconscionable" hourly rate of $12.04. See, e.g., United States v. Anaya, 509 F.Supp. 289 (S.D.Fla.1980) (district court conducting en banc session), aff'd sub nom., United States v. Zayas-Morales, 685 F.2d 1272 (11th Cir.1982). After the district judge failed to circulate the suggestion for en banc review, Ray moved to recuse the trial judge arguing, among other things, that the district court's two year delay in acting on his motion for attorney fees and the inordinately small award were evidence of the district court's bias. The district court denied Ray's recusal motion. Ray attempted to appeal the denial of the recusal motion, but this Court refused to review the interlocutory order until final judgment. See Loranger v. Stierheim, No. 89-6117 (11th Cir. Feb. 1, 1990).
 
 
 8
 While Ray's appeal of the recusal motion was pending, the district court stayed its reconsideration of the initial fee award. After this Court refused to consider Ray's appeal of the recusal motion, the district court proceeded to hold a hearing on Ray's request for attorney fees. This time, the district court awarded Ray attorney fees of $50,400. Reviewing Ray's time sheets, the district court found that approximately 800 hours of the 2907 hours claimed were devoted to this particular case, and only 560 hours of that 800 were reasonable. The district court found that a reasonable hourly rate was $75, and that in this case an upward adjustment to $90 was appropriate. Ray now appeals from the district court's award, as well as the district court's denial of his motion for recusal.
 
 II. DISCUSSION
 A. Motion for Recusal
 
 9
 Ray contends that the district judge erred by failing to recuse himself from this case pursuant to 28 U.S.C.A. Sec. 455(a).[1] We review a district court's disposition of a recusal motion for an abuse of discretion. Jaffree v. Wallace, 837 F.2d 1461, 1465 (11th Cir.1988); Davis v. Board of Sch. Comm'rs, 517 F.2d 1044, 1052 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).
 
 
 10
 Disqualification under section 455(a) is required only when the alleged bias is personal in nature. Phillips v. Joint Legislative Comm., 637 F.2d 1014, 1020 (5th Cir.1981), cert. denied, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982); In re Corrugated Container Antitrust Litigation, 614 F.2d 958, 964 (5th Cir.), cert. denied, 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980). "[F]or a bias to be personal, and therefore disqualifying, it 'must stem from an extra-judicial source.' " Id. (quoting United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966)). E.g., Potashnick v. Port City Const. Co., 609 F.2d 1101, 1111 (5th Cir.) (recusal required where motion based on financial relationship between judge and litigant), cert. denied, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). Thus, as a general rule, a judge's rulings in the same case are not valid grounds for recusal. Berger v. United States, 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921). E.g., McWhorter v. City of Birmingham, 906 F.2d 674, 678 (11th Cir.1990) (upholding denial of recusal motion based on evidentiary rulings); Jaffree, 837 F.2d at 1465 (upholding denial of recusal motion based on adverse rulings by trial judge); Phillips, 637 F.2d at 1020 (upholding denial of recusal motion based on judge's conclusions on points of fact and law).
 
 
 11
 Every incident of alleged bias cited by Ray occurred during the trial judge's handling of the motion for fees. Specifically, Ray points to (1) the two year delay between the motion for attorney fees and the initial order, (2) the delay between our remand of the initial fee award and the district court's supplemental order, (3) the paucity of the initial award, and (4) the district court's failure to circulate Ray's petition for en banc review of the initial award. As none of these grounds "stem from an extra-judicial source," we cannot say that the district court abused its discretion in refusing to grant Ray's motion for a new trial.
 
 
 12
 To be sure, the fact that a judge's remarks or rulings occur in a judicial context does not insulate them from scrutiny. In rare cases, we have required recusal when "such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." Davis, 517 F.2d at 1051. See Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir.1988) (section 455(a) violated where (1) law clerk was son of partner in defendant's counsel's firm, (2) judge gave credit to that law clerk for "formulation" of opinion granting judgment in favor of defendant, and (3) law clerk held a hearing without the judge being present), cert. denied, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989); United States v. Holland, 655 F.2d 44, 47 (5th Cir.1981) (section 455(a) violated where judge increased defendant's sentence after remarking that defendant had "broken faith" with the court by appealing adverse ruling). Ray's complaints about the trial judge, however, are nothing more than complaints about the judge's timeliness and rulings. Although we are dismayed by the length of time between Ray's initial motion for attorney fees and the district court's ruling on that motion, neither the delay nor the adverse rulings constitute the sort of "pervasive bias" that requires recusal.
 
 B. Motion for Attorney Fees
 
 13
 The starting point in fashioning an award of attorney fees is to multiply the number of hours reasonably expended by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This "lodestar" may then be adjusted for the results obtained. Id. at 435-437, 103 S.Ct. at 1940-41; Norman v. Housing Authority, 836 F.2d 1292, 1302 (11th Cir.1988). Although a district court has wide discretion in performing these calculations, Hensley, 461 U.S. at 437, 103 S.Ct. at 1941, "the court's order on attorney fees must allow meaningful review--the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculations." Norman, 836 F.2d at 1304.
 
 
 14
 Ray requested attorney fees in the amount of $944,775 (2907 hours X $125/hr + enhancement factor of 1.6) plus $9671.23 in costs. The district court awarded Ray attorney fees of $50,400 (560 hours X $90) plus $3181.50 in costs. On appeal, Ray contends that the district court erred in fashioning his award by (1) using an hourly rate of $90, (2) inadequately explaining the reduction in claimed hours, (3) failing to enhance the award as requested, and (4) failing to award all the costs claimed. We review a district court's award of attorney fees for an abuse of discretion. Popham v. City of Kennesaw, 820 F.2d 1570, 1581 (11th Cir.1987). Failure to adhere to the procedures we have set forth for the fashioning of fee awards constitutes an abuse of discretion. Gilmere v. City of Atlanta, 931 F.2d 811, 814 (11th Cir.1991); NAACP v. City of Evergreen, 812 F.2d 1332, 1334 (11th Cir.1987).
 
 1. The reasonable hourly rate
 
 15
 The first step in the computation of the lodestar is determining the reasonable hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable comparable skills, experience, and reputation." Norman, 836 F.2d at 1299 (citing Blum v. Stenson, 465 U.S. 886, 895-96 n. 11, 104 S.Ct. 1541, 1547-48 n. 11, 79 L.Ed.2d 891 (1984)). The party seeking attorney fees bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates." Id. By "satisfactory evidence," we mean more than affidavits containing statements that a given fee is reasonable. Id. See, e.g., Mayson v. Pierce, 806 F.2d 1556, 1557 (11th Cir.1987) (in addition to attorney affidavits, fee applicant presented evidence of rates charged to other clients, a national survey of hourly rates, and attorney fee awards in other cases in the district).
 
 
 16
 Ray requested an hourly rate of $125. In support of that rate, he presented the district court with three affidavits, all executed by attorneys in the Dade County area, all testifying that an hourly rate of $125 was reasonable. In opposition to these affidavits, the County Defendants submitted another attorney's affidavit, testifying that an hourly rate of $60-75 was reasonable. Plainly, none of these affidavits are "satisfactory evidence." Given the deficiency in the affidavits, the district court was free to disregard them and make the fee award based on its own experience. Norman, 836 F.2d at 1303.
 
 
 17
 Apparently relying on its own experience, the district court simply stated that "[a] reasonable hourly rate of attorneys fee [sic] for this cause of action at the time in question for an attorney with the general legal background and experience of the movant is $75." Then looking to the difficulty of the case, the contingent nature of the fee and the time limitations imposed, the district court adjusted the hourly rate upwards to $90.[2] Although the district court was free to rely on its own experience in determining a reasonable hourly rate, it was not relieved from its obligation to provide an explanation of its reasoning. See Gilmere, 931 F.2d at 814 (remanding attorney fee award where district gave no explanation of how it arrived at reasonable rate). The district court adequately explained why it raised the $75 rate to $90. However, the district court failed to explain how it arrived at its initial hourly rate of $75. This failure constitutes an abuse of discretion. On remand the district court should explain how it arrived at this figure.[3]
 
 2. The reasonable number of hours
 
 18
 The next step in the computation of the lodestar is the ascertainment of reasonable hours. The party seeking attorney fees begins by submitting evidence of the hours worked. Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. The district court should then exclude (1) excessive or otherwise unnecessary hours, (2) redundant hours, and (3) hours spent on discrete and unsuccessful claims. Norman, 836 F.2d at 1301-02. As we explained in Norman, "excessive or otherwise unnecessary hours" are those hours that would be unreasonable to bill a client, "irrespective of the skill, reputation, or experience of counsel." Id. at 1301 (emphasis in original). Where the court believes that the attorney seeking fees is inefficient or unskilled, the court should adjust the hourly rate, not reduce the time billed. Perkins v. Mobile Housing Bd., 847 F.2d 735, 738 (11th Cir.1988).
 
 
 19
 Ray sought reimbursement for 2907 hours. In support of those hours, Ray submitted an 80-page typed summary of the hours spent on this case and the related state litigation as well as copies of his contemporaneous handwritten time sheets. The district allowed only 560 hours. In making that reduction, the court first found that "a review of the movant's time sheets reflects a total of approximately 800 allowable hours devoted to this particular case." This statement fails to comply with the requirement set forth in Norman that the district court "explain which hours are disallowed and show why an award of those hours would be improper." Norman, 836 F.2d at 1304. By failing to satisfy this requirement, the district court abused its discretion.[4] See Gilmere, 931 F.2d at 815 (remanding award that reduced claimed hours because those hours were "excessive"); Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1318 (11th Cir.1989) (remanding award that reduced claimed hours because those hours were "unreasonable"); Perkins, 847 F.2d at 738 (remanding award that reduced hours claimed because those hours were "excessive").
 
 
 20
 In this case, however, the district court's ability to explain its disallowance of hours was severely hampered by Ray's failure to submit his request in a form which would enable the court to determine how much time was spent on the federal litigation and how much time was spent on the state litigation and other matters. When the request for attorney fees does not permit easy division between compensable and non-compensable hours, the district court should require the party seeking fees to refashion its request. See King v. McCord, 707 F.2d 466, 468 (11th Cir.1983) (burden on party seeking fees to provide sufficient evidence for party to make correct division). Thus, rather that simply slashing Ray's requested fees as excessive, the district court should have required Ray to resubmit his request in a form which allowed the court to clearly delineate between the federal and state litigation.
 
 3. Adjustment to the lodestar
 
 21
 After determining the lodestar by multiplying the reasonable hourly rate times the hours reasonably expended, the court must determine the necessity of an adjustment for the results obtained. Norman, 836 F.2d at 1302. Only if the results obtained are excellent should the court award the full lodestar amount. Hensley, 461 U.S. at 435, 103 S.Ct. at 1940. If the plaintiff obtains only partial or limited success, then a reduction in the lodestar is appropriate. Id.; Farrar v. Hobby, --- U.S. ----, ----, 113 S.Ct. 566, 575, 121 L.Ed.2d 494 (1992). See also Norman, 836 F.2d at 1302 (discussing how to adjust lodestar downward). Finally, "in certain rare and exceptional cases," some upward adjustment of the loadstar might be called for. Pennsylvania v. Delaware Valley Citizens Council, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).
 
 
 22
 Ray urged twelve grounds in support of his argument that the lodestar should be enhanced by a factor of 1.6--namely the twelve Johnson factors. The district court relied on three of these factors in ascertaining a reasonable hourly rate for purposes of the lodestar. However, the district court failed to address the other nine factors. Indeed, the district court's award contains no discussion of enhancement. On appeal, Ray argues that the district court's failure to address each of these factors was an abuse of discretion.
 
 
 23
 We do not agree with Ray that the district court was required to totemically recite the twelve Johnson factors in determining whether to enhance the award. As the Supreme Court has repeatedly stated, those factors are appropriately considered as part of the lodestar itself. See Blanchard v. Bergeron, 489 U.S. 87 94-95, 109 S.Ct. 939, 944-45, 103 L.Ed.2d 67 (1989); Delaware Valley Citizens Council, 478 U.S. at 564-65, 106 S.Ct. at 3097-98; Blum, 465 U.S. at 900, 104 S.Ct. at 1549; Hensley, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. Nevertheless, we are bound by precedent to hold that the district court abused its discretion by failing to discuss whether Ray's case was one of exceptional success. In NAACP v. City of Evergreen, 812 F.2d 1332, 1337 (11th Cir.1987), we reviewed a fee award where the prevailing plaintiff had sought enhancement based on several of the Johnson factors. Although we noted that those factors "usually should not provide an independent basis for increasing the fee award," we remanded the award because the district court had failed to consider whether it was a case of exceptional success. Id. Following City of Evergreen, the district court on remand should consider whether adjustment of the lodestar upward or downward is appropriate.
 
 4. Reasonable expenses
 
 24
 " 'With the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988' and 'the standard of reasonableness is to be given a liberal interpretation.' " City of Evergreen, 812 F.2d at 1337 (quoting Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir.1983)). In its fee award, the district court awarded Loranger only $3181 of the claimed $9671.23 in costs. Given City of Evergreen's command to interpret "reasonable expenses" liberally, the district court abused its discretion by reducing Ray's allowed costs by $6489.77 without any explanation.
 
 III. CONCLUSION
 
 25
 For the foregoing reasons, we AFFIRM the district court's order denying Loranger's motion for recusal, and VACATE and REMAND the district court's fee award for reconsideration. On remand, the district court should order Ray to undertake to separate the time and expense related to the federal litigation from that not so related. After that is done, the court should be able to make findings as to the total time and expense reasonably expended on the federal litigation. As Ray made his initial application for attorney fees more than four years ago, we encourage the district court to reconsider the fee award proceed with expediency.
 
 
 26
 COX, Circuit Judge, concurring in part and dissenting in part:
 
 
 27
 I join that part of the court's opinion addressing the motion for recusal. I cannot join the part addressing the award of fees.
 
 
 28
 A jury awarded William Loranger $20,000 in his suit against Dade County, Florida and various county officials. We review here the district court's award of attorney fees in the amount of $50,400 to attorney Michael D. Ray ("Ray"). It should be noted at the outset that another attorney, Neil Chonin, was lead trial counsel for the plaintiff. The parties stipulated that a reasonable fee for his services in this case was $25,000. (R.5-200). That fee has been paid. Attorney Alexander William Kent, also representing the plaintiff, has sought compensation for 60 hours work at $125 per hour, or "no less than $7,500 plus interest." (R.7-214 at 2). That application is not before us on this appeal. What is before us is Ray's motion seeking an outrageous award of $944,775 in fees and $9,671.23 in costs.
 
 
 29
 The defendants assert two principal objections to Ray's fee request. First, they argue that the time compensable under 42 U.S.C. Sec. 1988 is the time that was reasonably expended on this lawsuit, and that Ray's fee request seeks compensation for time expended other than on this litigation. The majority opinion addresses this argument, holding that on remand the district court should order Ray to separate the time and expense related to this litigation from that not so related.[1] Second, the defendants challenge the time that Ray alleges was expended on this lawsuit. The defendants' objection to Ray's fee request is not that the time was not spent, but rather that the time spent was excessive--i.e., not reasonably expended in the conduct of the litigation--and that the exercise of "billing judgment" requires that the hours be reduced. See Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983). Moreover, defendants contend that under such circumstances the district court was entitled to reduce Ray's request in gross rather than attempting the impossible task of itemizing those numerous hours for which Ray was not entitled to compensation. (Brief of Appellees 10-11). The majority rejects this argument.
 
 
 30
 A review of Ray's fee request and a review of the record convince me that many of the hours expended in the conduct of this litigation were "excessive, redundant or otherwise unnecessary." See Hensley, 461 U.S. at 434, 103 S.Ct. at 1939-40. The record is replete with long, rambling documents filed by Ray, which contain more rhetoric than substance. The fee request evidences patently excessive expenditures of time throughout the litigation. Ray seeks, for example, compensation for over 100 hours for preparing his initial fee request. The trial on the merits in this case consumed only 2 1/2 days--a small fraction of the time Ray spent preparing his request for fees.
 
 
 31
 The majority, citing Norman v. Housing Auth., 836 F.2d 1292, 1304 (11th Cir.1988), finds error in the district court's failure to "explain which hours are disallowed and show why an award of these hours would be improper." Norman is one of a long line of decisions in this circuit applying the rule that when hours are disallowed the court should identify the hours disallowed and explain why they are disallowed.[2] In a case like this one, however, where the fee motion and supporting documents are so voluminous, it should be sufficient for the court to provide a concise but clear explanation of its reasons for the reduction.
 
 
 32
 Ray bombarded the district court with a vast array of documents in support of his motion for fees and expenses. In July of 1986, Ray filed photocopies of "contemporaneous" time sheets totalling some 199 pages. Even the typed summary of the time sheets numbered some 82 pages. All in all, the motions, time sheets, and time summaries submitted by Ray exceed 400 pages. It would be unduly burdensome for the district court to sort through these documents and evaluate Ray's request for attorney fees hour-by-hour.
 
 
 33
 The majority, however, mandates such an hour-by-hour review pursuant to Norman and its progeny. The instant case evades the application of Norman. Implicit in the Norman hour-by-hour rule is the assumption that a district court judge can feasibly and expeditiously engage in such a precise review. Where fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources. Hence, the instant case falls outside the Norman hour-by-hour rule. This court has not previously addressed the question of whether fee documentation can be so voluminous as to render an hour-by-hour review impractical.
 
 
 34
 Other circuits have grappled with the question, and have almost uniformly held that where a fee application is voluminous, an hour-by-hour analysis of a fee request is not required. See, e.g., Jacobs v. Mancuso, 825 F.2d 559, 562 (1st Cir.1987); Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1202-03 (10th Cir.1986); New York Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir.1983); Copeland v. Marshall, 641 F.2d 880, 903 (D.C.Cir.1980). In fact, given a voluminous application, most circuits recognize the utility of across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure. See id. This approach does not relieve district courts of the requirement to concisely but clearly articulate their reasons for selecting specific percentage reductions. See Gates v. Deukmejian, 987 F.2d 1392, 1399 (9th Cir.1992). Some circuits explicitly state that the adequacy of a court's explanation should be carefully scrutinized where substantial fees are involved. See, e.g., Gates, 987 F.2d at 1399; In re Continental Illinois Sec. Litig., 962 F.2d 566, 570 (7th Cir.1992); In re Fine Paper Antitrust Litig., 751 F.2d 562, 594-95 (3d Cir.1984). Regardless, a court's explanation must provide for meaningful review. See, e.g., Gates, 987 F.2d at 1400. When faced with a massive fee application, however, an hour-by-hour review is both impractical and a waste of judicial resources. See Copeland, 641 F.2d at 903.
 
 
 35
 I would therefore adopt our sister circuits' position regarding review of voluminous fee applications. Accordingly, I would remand this case to the district court but with a mandate different than that found in the majority opinion. Like the majority, I would have the district court require Ray to separate the time and expense related to this litigation from that not so related. However, after that is done, the district court should only be required to provide a concise but clear explanation of its reduction as opposed to engaging in an hour-by-hour analysis. In a case like this one, no more should be required.[3]
 
 
 
 *
 Hon. C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Section 455(a) provides:
 Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 28 U.S.C.A. Sec. 455(a) (West Supp.1993).
 
 
 [2]
 The district court's upward adjustment of the hourly rate reflects its consideration of the twelve factors discussed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). Johnson originally mandated twelve factors that district courts should balance in fashioning fee awards. Although its balancing test has since been displaced by the lodestar formula, we have expressed our approval of district courts considering the Johnson factors in establishing a reasonable hourly rate. Norman, 836 F.2d at 1299
 
 
 [3]
 In addition, the district court should ensure that the hourly rate compensates Ray for the time value of money. See Missouri v. Jenkins, 491 U.S. 274, 283, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); Norman, 836 F.2d at 1302. Although Norman suggests enhancing the lodestar to account for delay, we believe the better view in light of Jenkins is simply to apply current rather than historic hourly rates
 
 
 [4]
 Indeed, the order's reference to "approximately 800 hours" suggests that the Court did not undertake any meaningful review of Ray's time sheets
 
 
 [1]
 The majority also concludes that a remand is necessary because the district court needs to decide whether this is that rare and exceptional case where an upward adjustment of the lodestar is called for because of exceptional success. I cannot agree. The district court has already found that the success the plaintiff achieved in this case "was, in large part, due to the services at trial of another lawyer." (SR.1-400 at 3 n. 7) (emphasis added). This record could not support an upward adjustment of the lodestar on this application. The majority further insists in footnote 3 that on remand the district court should ensure that the hourly rate compensates Ray for the time value of money. I do not understand Ray's brief on appeal to raise the time value of money issue, and therefore I would not address it. See Medical Laundry Serv. v. Board of Trustees of the Univ. of Alabama, Birmingham, 856 F.2d 128 (11th Cir.), cert. denied, 488 U.S. 826, 109 S.Ct. 77, 102 L.Ed.2d 53 (1988)
 
 
 [2]
 The genesis of the Norman hour-by-hour rule is somewhat problematic. It appears to have been first articulated in Fitzpatrick v. IRS, 665 F.2d 327, 332-33 (11th Cir.1982). The Fitzpatrick court, in turn, relied on In re First Colonial Corp. of Am., 544 F.2d 1291, 1298-99 (5th Cir.), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). In re First Colonial, however, does not mandate an hour-by-hour explanation of fee reductions. To the contrary, the In re First Colonial court held that a judge "must briefly explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors listed in Johnson [v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974) ] affected his decision." In re First Colonial, 544 F.2d at 1300
 
 
 [3]
 Other circuits have held that a district court may, in its discretion, deny a request for attorney's fees in its entirety when the request is outrageously unreasonable. See, e.g., Fair Hous. Council of Greater Washington v. Landow, 999 F.2d 92 (4th Cir.1993); Lewis v. Kendrick, 944 F.2d 949 (1st Cir.1991); Brown v. Stackler, 612 F.2d 1057 (7th Cir.1980). In this case, however, the defendants do not argue that the request in question should be denied outright