**RISS & CO., Inc. v. FELDMAN.**

No. 1019.

Municipal Court of Appeals for the

District of Columbia.

Argued Feb. 5, 1951.

Decided March 22, 1951.

Rehearing Denied April 5, 1951.

1. He cites Code, Sections 12–304, 28–1101, 28–1104, 28–1703.

A. Alvis Layne, Jr., Washington, D. C. (C. Brewster Chapman, Jr., Washington, D. C., on the brief), for appellant.

Bernard I. Nordlinger, Washington, D. C. (Milton W. King, Wallace Luchs, Jr., and E. B. Miller, all of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff Feldman sued his former partner Neugebauer and also Riss & Co., Inc., for the conversion of his interest in the assets of a partnership which had existed between Feldman and Neugebauer. He charged that the conversion was committed maliciously, wantonly, unlawfully and recklessly. The individual defendant, Neugebauer, a non-resident of the District of Columbia, was not served with process. The trial court gave judgment against the corporate defendant, Riss & Co., for compensatory damages of $1,750 and punitive damages of $1,250 plus interest. A finding was also made against the corporation on its counterclaim for advances allegedly made for the benefit of the partnership. The corporation appeals from the entire judgment.

The transactions culminating in the present lawsuit originated in ostensible efforts to meet the requirements of the Interstate Commerce Motor Carriers Act, 49 U.S.C.A. § 301 et seq., which requires carriers by motor vehicle engaged in interstate transportation of freight to obtain permits before engaging in that business. Riss & Co. is such a permittee. In June 1947 Feldman and Neugebauer formed a partnership under the name of Century Transfer Company for the purpose of acting as a "provider" for Riss & Co. for business between Washington, Baltimore and St. Louis. The partnership, which had no permit, was to solicit freight from shippers, provide vehicles for its transportation and arrange for billings to customers in the name of Riss & Co. Riss & Co. collected the amount of the freight charges direct from the shipper and the agreement was that the accounts receivable from these bills belonged to Riss & Co. But the partnership was entitled to receive a commission based on a percentage of the gross amount of the freight bills of not less than 82½% minus sums Riss & Co. had to pay on claims of shippers arising out of the handling of freight by the

partnership. Expenses for truck employees and similar items were the obligation of the partnership. All these arrangements were embodied in a mimeographed plan which Riss & Co. circulated to its "providers," including this partnership, and then were agreed to orally.

At the time the partnership was formed, Neugebauer already had experience as a vice-president of another transfer company. Feldman had no experience in the transportation business. Under the partnership arrangement, Feldman was to furnish the required capital, Neugebauer was to operate the business, and they were to share equally in the profits. According to instructions given by Feldman and Neugebauer to The City Bank, where the firm's account was kept, both were to sign all checks. For a month or two Feldman personally kept the partnership books and checks were signed by both men. Subsequently, however, Feldman gave Neugebauer sole authority to sign checks and thereafter had nothing directly to do with the business. In July 1947 he and Neugebauer had caused their attorneys to take the initial steps in Maryland toward incorporating Century Transfer Company, Inc. However, no seal was ever adopted and, according to Feldman, no officers were elected, stock issued, or business conducted by it. There was no evidence that the partnership ever transferred any of its business or assets to this embryo corporation.

Feldman testified that he advanced a total of $4,357.18 to or on account of the partnership, Century Transfer Company, and of this amount he was reimbursed all but $1,450. This testimony was supported by other evidence. In addition, he paid $300 in connection with the repossession of a truck tractor and trailer referred to hereinafter, making a total of $1,750 net payments. This was the amount (aside from interest) awarded Feldman by the trial court as compensatory damages.

Included among the assets of the partnership were the following: (1) Certain desks and other office supplies. This office equipment "disappeared" and was not traced into the possession of either defendant. (2) Certain bank deposits in the name of the partnership. (3) Commissions not yet paid by Riss & Co. on receivables from freight originated by the partnership. No itemization of such commissions was made by Feldman, who apparently based his claim for recovery on the net amount he had invested in the partnership. (4) A truck tractor and trailer. This equipment was purchased in June 1947 with the proceeds of a loan made to Feldman and Neugebauer as partners by The City Bank of Washington in the amount of $5,642.83, for which a note for $6,000 was delivered to the bank. Payments thereon were made through December 1947, and thereafter, the balance being in arrears, the equipment was delivered to the bank by Neugebauer in January 1948 and was sold by the bank in May 1948 for $4,320. Subsequent to the sale, Feldman made a $300 deficiency payment directly to the bank to discharge his personal liability on the note.

The alleged conversion occurred in the following manner. In November or December 1947 Neugebauer told Feldman that Riss & Co. was taking over the providership of the partnership and that the partnership was going out of business. Feldman testified that Neugebauer told him that he (Feldman) was to be reimbursed for all the money he had put into the partnership. This testimony was not admitted as against Riss & Co. but a witness for Feldman further testified that he had heard the president of Riss & Co. tell Neugebauer that Feldman would be "taken care of financially."

Riss & Co. did in fact take over the providership. It caused to be organized the Baltimore-St. Louis Express, Inc., a Maryland corporation and wholly-owned subsidiary of Riss & Co., which was to operate the former business of the partnership. Neugebauer was named president of this new corporation.[1] On December 15, 1947 there was executed an agreement on which rested largely the charge of conversion. This agreement was signed by the attorney for Riss & Co., in his capacity as chairman

1. Since then Neugebauer has become a vice-president of Riss & Co., Inc.

of the board of directors of Baltimore-St. Louis Express, Inc. It was also signed twice by Neugebauer, once in his individual capacity and again as "president" of "Century Transfer, Inc." This agreement bore the seal of Baltimore-St. Louis Express, Inc., but did not bear any seal for "Century Transfer, Inc.," although the usual acknowledgment attached to the agreement stated that the corporate seal of the latter had been affixed by Neugebauer. Feldman was not a party to this agreement and was not consulted about it. Under this agreement all accounts receivable owned by Neugebauer personally or by "Century Transfer, Inc.," were sold to Baltimore-St. Louis Express, Inc., and the latter corporation agreed to pay all indebtedness of Neugebauer and "Century Transfer, Inc." arising out of the providership operation "as may be determined by an auditor selected by Baltimore-St. Louis Express, Inc. for that purpose," provided, however, it would not pay "any contributions of capital which may have been made by any third person." So far as the evidence disclosed, there was never any accounting as provided in this agreement. But at the trial certain of the books of the partnership were produced by Riss & Co. which could only have come into its possession through Neugebauer. Long after the alleged conversion the books of Riss & Co. and of its wholly-owned subsidiary continued to show receipts and disbursements on account of "Century Transfer, Inc." The basis of the corporate defendant's counterclaim in this suit is that the disbursements which it has paid for the benefit of "Century Transfer, Inc." exceed the receipts by $3,000 and that, if there actually was no corporation but only a partnership, Feldman, as a partner, should be liable for the excess as a debt owing to Riss & Co.

In the agreement, the Riss & Co. subsidiary also agreed to purchase certain equipment, including the tractor and trailer which the partners had bought at the outset of the partnership, although this purchase by the subsidiary was conditioned on existing encumbrances being adjusted. As to what actually happened to the tractor and trailer, testimony differed sharply. Feld-

man testified that it was actually taken over and used by Baltimore-St. Louis Express, Inc. One of the officers of Riss & Co. testified at first that it had been used once after the execution of the agreement but in subsequent testimony denied it. Suffice it to say that The City Bank repossessed it early in January 1948, a few weeks after the execution of the agreement, without it ever having been formally purchased by the subsidiary.

The trial court found as facts: (1) that there was a partnership between Feldman and Neugebauer; (2) that Baltimore-St. Louis Express, Inc., the wholly-owned subsidiary of Riss & Co., was formed to defraud Feldman; (3) Riss & Co. had actual knowledge or was charged with knowledge through Neugebauer of the existence of the partnership at the time its assets were taken over; (4) that the taking over of the assets of the partnership constituted a conversion; (5) that there was use of the tractor and trailer by the corporate defendant; (6) that the corporate defendant was guilty of being malicious, vindictive, negligent, reckless and willful in its conduct towards Feldman; (7) that the interest of Feldman so converted had been proved in the amount of $1,750; (8) that punitive damages against the corporate defendant were justified in the amount of $1,250 and (9) that the corporate defendant had not carried the burden of proving its counterclaim.

The corporate defendant, appellant here, contends that the evidence fails to establish a conversion of plaintiff Feldman's interest in the partnership. We think it does. On one day in December 1947, the partnership was carrying on the so-called providership business and the next day, the same business was being carried on by a wholly-owned subsidiary corporation of Riss & Co., the defendant, which subsidiary, the trial court found, was formed purposely to defraud the plaintiff. The plaintiff was simply ignored although it was he who had furnished the entire capital of the partnership business. Neugebauer, who before had been a partner of the plaintiff, suddenly became president of the new corporation. It is a well-settled

principle of law that partners owe to each other the duty of the utmost good faith in all that pertains to their relationship.[2] The observance of this good faith requires that, before attempting the disposition of the entire business by one partner, the other, when accessible, should be consulted and given an opportunity to protect himself by forbidding or making objections to its consummation.[3] Feldman was not consulted at all about the agreement made with the Riss & Co. subsidiary. Neugebauer failed entirely in his duty towards Feldman and the corporate defendant which knowingly aided in the scheme stands in no better position. If he could prove no other damages, plaintiff would at least be entitled to nominal damages for this wrong.[4]

We have concluded, however, that the measure for compensatory damages adopted by the trial court was erroneous and that such error requires a new trial on this issue. For such conversion, the measure of recovery is the reasonable value of the property converted plus interest and any special damage the plaintiff might prove.[5] In this case, that would involve an evaluation of plaintiff's interest in the assets of the partnership at the time of the conversion. In making such evaluation the court should consider the partnership interest in any accounts receivable due the partnership at that time, the value (if any) of the firm's bank account, the rental value of the tractor and trailer (since it was returned to the bank within a few weeks), good will and the value of any other property or interest which may have been converted as a result of the tort of the defendant.

The damages assessed by the trial court do not meet this test. Admittedly they represent the unpaid advances made by the plaintiff to the partnership plus $300 paid by him to The City Bank nine months after the conversion. But capital advances made by Feldman between July and December have no necessary relationship to the value of the assets in December. The partnership bank account showed a large number of deposits and withdrawals, many of the latter on checks signed by both the partners. There are in the record numerous figures as to the amount of the receivables on various dates but such evidence was not used as a basis for a finding of damages. It was largely plaintiff's interest in commissions on such receivables which were converted; but no value was placed on that interest. We think this was error. The reason for the court's error in this respect is apparent. Plaintiff originally sued in two counts, the first for conversion and the second in contract. The contract count obviously was based on the allegation that defendant had taken over the assets of the partnership on the representation that it would pay to plaintiff the amount of his investment. But this count was abandoned during the trial.

As to the awarding of punitive damages, that rests to a great extent within the discretion of the lower court sitting without a jury.[6] Since, however, the amount of punitive damages obviously is closely related to the amount of compensatory damages, we believe this question should also be included in the new trial.

The trial court awarded six percent interest on both compensatory damages and punitive damages fom December 1, 1947. These items were not included in the court's written trial finding. While interest on tort claims is sometimes allowable as a part of compensatory damages,[7] interest is not allowable as a part of punitive damages except as additional punishment.[8] And we believe that when they are thus

2. Holmes v. Keets, 80 U.S.App.D.C. 327, 153 F.2d 132.

3. Rowley, Modern Law of Partnership (1916) § 444.

4. 25 C.J.S., Damages, § 9; 53 Am.Jur., Trover & Conversion, § 105.

5. See Boiseau v. Morrissette, D.C.Mun. App., 78 A.2d 777.

6. Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 7 Cir., 116 F.2d 708.

7. Miller v. Robertson, 266 U.S. 243, 45 S. Ct. 73, 69 L.Ed. 265.

8. McCormick, Damages (1935) § 57, pp. 226–227.

awarded as a part of damages they must be included when deciding whether a case is within the $3,000 jurisdictional limit of the Municipal Court.[9] If this were the only question involved we could order a remittitur,[10] but since we are ordering a new trial on the entire issue of damages, we need not consider the question further.

Defendant contends that plaintiff Feldman cannot recover any damages for the conversion of his interest in the partnership because there has never been an accounting between Feldman and Neugebauer with regard to their respective interests. This defense was not offered at the trial and was urged for the first time on a motion for a new trial. It is apparent the defense came too late.[11] Moreover, we can see no reason why it should be available to defendant Riss & Co. The defendant stands in no such relation to the firm that it may demand an accounting before suit is brought against it for the conversion of the firm's assets. The other partner, Neugebauer, who might have raised the objection, was not served and did not participate in the action.[12]

On the theory of conversion adopted by the trial court with sufficient evidence, we believe that the trial court was also correct in its decision against defendant's counterclaim. The counterclaim as presented would be allowable only on the theory that the business of a partnership was taken over by Riss & Co. with Feldman's knowledge and consent or authority and hence that the liabilities of the partnership, if any, were properly paid by Riss & Co. This the trial court found was not true. We cannot disturb such finding. On the same theory it also follows that the trial court was correct in its ruling that evidence offered by Riss & Co. as to the counterclaim had not been sufficiently connected with the transaction.

Reversed, with instructions to award a new trial on the issue of plaintiff's damages.

9. Code 1940, Supp. VII, § 11–755 (a).

10. Washington & G. R. Co. v. Tobriner, 147 U.S. 571, 13 S.Ct. 557, 37 L.Ed. 284.

11. Atchison & Keller v. Taylor, D.C.Mun. App., 51 A.2d 297. Germaine v. Cramer, D.C.Mun.App., 65 A.2d 573.

12. Doll v. Hennessy Mercantile Co., 33 Mont. 80, 81 P. 625.