Gaye LIVELY, Appellant,

v.

FLEXIBLE PACKAGING
ASSOCIATION, et
al., Appellees.

No. 05–CV–1474.

District of Columbia Court of Appeals.

Argued Nov. 1, 2006.
Decided Aug. 23, 2007.
As Amended Aug. 30, 2007.

Thomas L. McCally, with whom William J. Carter, Washington, DC, and Lawrence Eiser, Silver Spring, MD, were on the brief, for appellant.

Christopher T. Handman, with whom William D. Nussbaum, Jonathan S. Franklin and Jessica L. Ellsworth, Washington, DC, were on the brief, for appellee Flexible Packaging Association.

William John Hickey, Rockville, MD, for appellee Estate of Glenn Braswell.

Before GLICKMAN, KRAMER and FISHER, Associate Judges.

KRAMER, Associate Judge:

This case, brought under the District of Columbia Human Rights Act ("DCHRA"), D.C.Code §§ 2–1401.01 to –1411.06 (2001), is before the court for the third time for review of issues arising from appellant Gaye Lively's employment discrimination claims against her employer, appellee Flexible Packaging Association (FPA), and its president, the late Glenn Braswell. Her complaint, filed in 1993, alleged six claims for relief, four of which were ultimately presented to the jury. Those four were (1) Hostile Work Environment, (2) Unequal Pay, (3) Retaliation, and (4) Intentional Infliction of Emotional Distress. In 1996, at the conclusion of a jury trial, the jury returned verdicts in favor of Ms. Lively on all four of the claims, and awarded her a total of $458,158 in compensatory damages, of which $156,600 was awarded for the Hostile Work Environment claim.[1] The jury also awarded Ms. Lively punitive damages in the amount of $458,158 against FPA (the same amount as the jury awarded against FPA for compensatory damages) and $77,500 against Mr. Braswell. Thereafter, FPA and Mr. Braswell filed a motion seeking judgment notwithstanding the verdict (JNOV) with respect to all four claims. The trial court granted that motion and vacated the judgments.

The trial court's decision was affirmed in all respects by a split panel of this court in 2001. *See Lively v. Flexible Packaging Ass'n,* 765 A.2d 954 (D.C.2001). Ms. Lively, however, filed a timely petition for a rehearing en banc based upon the Supreme Court's issuance of a decision in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153

---

1. The jury awarded $155,135 on the unequal pay claim, $91,823 on the retaliation claim, and $54,600 on the intentional infliction of emotional distress claim.

L.Ed.2d 106 (2002), which held that Hostile Work Environment claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e *et seq.*, were not time-barred so long as at least one act forming the basis for the claim occurred within the statutory period permitted for the filing of the claim. The petition for en banc review was granted with respect to the Hostile Work Environment claim only, and in 2003 the en banc court, applying the holding of *Morgan*, unanimously reversed the trial court's JNOV with respect to that claim. *See Lively v. Flexible Packaging Ass'n*, 830 A.2d 874 (D.C.2003) (en banc) (hereinafter "*Lively II*"). Judge Reid's comprehensive opinion for the en banc court sets out the factual background that underlies this claim and need not be repeated here.

On remand, with compensatory damages reduced to $156,600 to reflect the jury's award solely on the Hostile Work Environment claim, FPA moved to remit the punitive damages. In 2005, the trial court granted the motion in part, remitting the punitive damages against FPA from $458,158 to $156,600 and the punitive damages against the Braswell Estate from $77,500 to $26,489.50. Ms. Lively accepted the remitted amount.

The trial court then set a filing schedule for post-judgment motions addressing attorneys' fees and interest on the judgment. Ms. Lively filed a motion requesting $1,179,481.50 in attorneys' fees and a motion requesting interest on the compensatory and punitive damages from the date of the jury's decision.[2] On the same day Ms. Lively timely filed her reply to FPA and Braswell's opposition, the trial court issued its order awarding her attorneys' fees in an amount significantly less than she requested, limiting the interest on the compensatory damages awarded, and declining to provide for interest on the punitive damages awarded.[3]

The court gave three reasons for reducing Ms. Lively's $1,179,481.50 attorney fee request. The first reason was that Ms. Lively had calculated those fees based on the attorneys' current level of experience, that is, their experience as of the time of the filing of the motion for attorneys' fees, as opposed to their level of experience when the work was actually performed. This resulted in a reduction of $149,941. The second reason was that Ms. Lively had prevailed on only one of the four claims that were submitted to the jury. Based on this success (or lack thereof), the court reduced the attorneys' fees requested by an additional 25%. The third reason was that the trial court concluded that the billing records that Ms. Lively provided were unreliable. To take account of this unreliability, the court reduced the fees an additional 8%. Thus, the amount of attorneys' fees that the trial court actually awarded was $689,792.13. With respect to interest on the judgment, the court granted Ms. Lively 6% simple interest on the compensatory damages for the period between June 21, 1996 (the date of the verdict) and October 17, 2005 (the date when FPA offered to pay the portion of the judgment that was undisputed, an offer that Ms. Lively refused because FPA was unwilling to sign a stipulation proffered by Ms. Lively that acceptance of this payment was not a settlement of the matters that remained in dispute). Finally, the court

---

2. The motions also petitioned for costs, which were ultimately awarded in full and are not in dispute.

3. Unfortunately, the sequence was that the trial court issued its decision earlier in the day. Thus, Ms. Lively's timely filing of her reply brief was not available to the trial court before its ruling. Having had the advantage of full briefing for this appeal, we conclude that Ms. Lively has not been prejudiced by that sequence of events.

denied Ms. Lively's request for interest on the punitive damages. This appeal followed.

## I. ATTORNEYS' FEES

"'Our scope of review [of an award of attorney's fees] is a limited one because disposition of such motions is firmly committed to the informed discretion of the trial court. Therefore, it requires a very strong showing of abuse of discretion to set aside the decision of the trial court.'" *Maybin v. Stewart*, 885 A.2d 284, 288 (D.C.2005) (quoting *Steadman v. Steadman*, 514 A.2d 1196, 1200 (D.C.1986) (alteration in *Maybin* )). We limit our review to prevent squabbles over attorneys' fees from blossoming into "a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). On the other hand, it is important that attorneys who are willing to take on civil rights and other public interest work are adequately compensated, or it will be difficult to find competent counsel to handle this important job. The goal is to attract competent counsel for these cases, but not to provide them with windfalls. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *Save Our Cumberland Mountains, Inc. v. Hodel*, 273 U.S.App. D.C. 78, 80–81, 857 F.2d 1516, 1518–19 (1988) (en banc); *Copeland v.*

*Marshall*, 205 U.S.App. D.C. 390, 399, 641 F.2d 880, 889 (1980).

### A. The *Laffey* Matrix.

Ms. Lively claims that the trial court committed reversible error in declining to award attorneys' fees based upon the rates for attorneys at the experience level attained when the petition for attorneys' fees was filed, rather than their experience level at the time the work was actually done. As noted above, this ruling resulted in a reduction of her request for attorneys' fees by $149,941. We are unpersuaded that the approach taken by the trial court constituted an abuse of discretion. Certainly, the trial court did not err in looking to the *Laffey* Matrix as a beginning point for calculating these fees, nor does any party so claim.[4]

The *Laffey* Matrix, which has its origins in the case of *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C.1983), *rev'd in part on other grounds*, 241 U.S.App. D.C. 11, 746 F.2d 4 (1984), is a chart compiled yearly by the Civil Division of the United States Attorney's Office in the District of Columbia. It provides a schedule of hourly rates prevailing in the Washington, D.C. area in each year going back to 1981 for attorneys at various levels of experience.[5] *Piper v. United States Dep't of Justice*, 339 F.Supp.2d 13, 24 n. 8 (D.D.C. 2004). It is regularly used in the federal courts of this jurisdiction to determine at-

---

4. It is worth noting that this is not the only valid method for an equitable determination of attorneys' fees. For example, in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974), the court formulated a twelve factor method to determine a reasonable rate. *See also, e.g., Bratcher v. Bray–Doyle Independent School Dist.*, 8 F.3d 722, 725 (10th Cir.1993) (determining rates through the testimony of the parties' respective expert witnesses); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.1992) (estimat-

ing rates through the declarations of attorneys who practice civil rights law in California).

5. The *Laffey* Matrices, for the years 1992–2003 and 2003–2008 respectively, are available at:

http://www.usdoj.gov/usao/dc/Divisions/ Civil_Division/Laffey_Matrix_2.html and http://www.usdoj.gov/usao/dc/Divisions/ Civil_Division/Laffey_Matrix_7.html (hereinafter "Matrices").

torneys' fees where, as here, there is a statutory entitlement.[6] *Smith v. District of Columbia*, 466 F.Supp.2d 151, 156 (D.D.C.2006) ("In the District of Columbia, it has been traditional to apply the so-called *Laffey* Matrix ...."); *accord, e.g., Coleman v. District of Columbia*, 2007 WL 1307834 at *2–4, 2007 U.S. Dist. LEXIS 32743 at *13–18 (D.D.C. May 3, 2007); *Piper, supra*, 339 F.Supp.2d at 24 n. 8; *Northwest Coalition for Alternatives to Pesticides v. Browner*, 965 F.Supp. 59, 65 (D.D.C.1997).

Specifically, for each year going back to 1981–82, the Matrix sets out six different hourly rates for five different levels of attorney experience. As explained on the U.S. Attorney's Office web site:

> The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1–3 years after law school graduation), "senior associates" (4–7 years), "experienced federal court litigators" (8–10 and 11–19 years) and "very experienced federal court litigators" (20 years or more).

Matrices, *supra* note 5 at n. 2 (citing *Laffey, supra*, 572 F.Supp. at 371). Thus, the experience level of an attorney is an integral part of the calculation of attorneys' fees under the *Laffey* Matrix. In requesting an award of attorneys' fees, a prevailing litigant can determine the number of hours that an attorney spent on the case, determine the attorney's experience level for each of the hours, and then go to the chart applicable to the year in which the party petitions for an award of attorneys' fees—here indisputably the 2004–2005 cat-

egory[7]—and calculate what is owed by multiplying the number of hours for each experience level by the hourly rate for that experience level.

Ms. Lively argues that this procedure does not take into account the substantial delay in the payment of the fees. But there is no doubt that the Matrix has a built-in adjustment for inflation to compensate for that delay. The original rates for the Matrix were determined by the *Laffey* trial court for work performed in 1981–82. With respect to the yearly increase in the market hourly rates for each level of experience, the U.S. Attorney's Office represents on the website showing the Matrix that the rates for subsequent yearly periods have been "determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year and then rounding to the nearest $5." Matrices, *supra*, note 5 at n. 3. It further represents that "[c]hanges in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI–U) for Washington–Baltimore, DC–MD–VA–WV, as announced by the Bureau of Labor Statistics for May of each year." *Id.* The use of the CPI–U is intended to adjust the figures for inflation. As the U.S. Department of Labor explains on its website, "The CPI is generally the best measure for adjusting payment to consumers when the intent is to allow consumers to purchase, at today's prices, a market basket of goods and services equivalent to one that they could purchase in an earlier period [and is] also the best measure to use to translate retail sales and hourly or weekly earnings into real or inflation-free dollars."[8] Indeed, the ad-

---

**6.** The entitlement to attorneys' fees under the D.C. Human Rights Act derives from D.C.Code § 2–1403.13(a)(1)(E) (2001). *See also Goos v. Nat'l Ass'n of Realtors*, 314 U.S.App. D.C. 329, 332, 68 F.3d 1380, 1383 (1995), *reh'g denied and decision clarified by* 315 U.S.App. D.C. 397, 74 F.3d 300 (1996).

**7.** Each period runs from June 1 to May 31. Matrices, *supra* note 5.

**8.** United States Department of Labor, Bureau of Labor Statistics, *Consumer Price Indexes: Frequently Asked Questions*, available at http://www.bls.gove/cpi/cpifaq.htm.

justment for inflation by the use of current hourly rates, rather than the historic rates of the relevant legal community, has been recognized as a means of "approximat[ing] the value today of the historic rates charged at the time when the legal services actually were rendered." *Murray v. Weinberger,* 239 U.S.App. D.C. 264, 274, 741 F.2d 1423, 1433 (1984).

While there appears to be no case law from our court discussing application of the *Laffey* Matrix, we accept it as one legitimate means of calculating attorneys' fees in those cases, such as this, where a prevailing party is statutorily entitled to attorney's fees. In any event, the *Laffey* Matrix is merely a starting point, and an automatic application of its formula will not be appropriate in many cases and could result in an injustice to attorneys who had willingly taken on important public issues. The parties agree that the column of the *Laffey* Matrix for the year of 2004–05 provides the appropriate billing rates to be applied for the calculation of the attorneys' fees to be awarded in this case. The dispute, however, arises from the issue of whether the experience level for each of Ms. Lively's attorneys should have been determined by the year when the work was actually performed, or the year that the petition for fees was filed, that is, 2005.[9] Since the *Laffey* Matrix is designed to take account of inflation by providing attorneys with compensation based on their experience level at the time the work was done, but adjusted for the current market rate for an attorney of that experience level, it appears that to award fees based on current experience levels

would provide the attorneys with a windfall-unless there are other factors that would justify such a windfall.

Ms. Lively directs us to a number of cases that she asserts support her position, but none address the issue she raises here, that is, whether it is an abuse of discretion for a trial judge to use the current hourly market rates for an attorney's *experience level at the time the work was done,* instead of the attorney's *current experience level* in calculating the fees to be paid. For example, *King v. Palmer,* 285 U.S.App. D.C. 68, 906 F.2d 762 (1990), *rev'd in part on other grounds,* 292 U.S.App. D.C. 362, 950 F.2d 771 (1991) (en Banc), cited by Ms. Lively, addressed the issue of providing an enhancement to attorneys who take civil rights cases on a contingency fee basis and thereby risk the possibility of never being paid. The court ruled that in such cases an enhancement payment may be appropriate. The District of Columbia argued that the enhancement awarded was excessive because it was calculated by using the attorney's then current, as opposed to historic billing rates. The court nonetheless upheld the use of current billing rates, ruling that it saw "no reason why counsel should not be compensated for the delay in receiving the enhancement award" as well as the regular award of attorneys' fees. It addressed, however, neither the issue of using the attorney's current experience level for work done when the attorney was less experienced, nor the *Laffey* Matrix, which has a built-in adjustment for inflation that recognizes its impact on the value of the fees obtained.

The other cases relied upon by Ms. Lively to support her position are equally distinguishable.[10] Thus, we cannot accept

---

**9.** Thus, under the trial court's ruling, an attorney who had 5 years experience in 1995 would be entitled to $235 an hour—the 2005 rate for an attorney with 4–7 years of experience—for any work performed in 1995. Under the rule urged by Ms. Lively, the same attorney would be entitled to $360 an hour,

which is the 2005 rate for an attorney with 11–19 years of experience, under a presumption that the attorney had 15 years of experience in 2005.

**10.** *See, e.g., Loranger v. Stierheim,* 3 F.3d 356, 361 n. 3 (11th Cir.1993), *withdrawn,* 10 F.3d

her argument that the trial court abused its discretion in using "the current rates applicable to each level of experience the individual lawyers had attained when the work for which compensation is sought was performed." *Laffey, supra,* 572 F.Supp. at 371 n. 31.

## B. Limited Success

■ The trial court further reduced the attorney's fees by 25% because, as the judge explained, Ms. Lively "was ultimately successful on only one of the four claims submitted to the jury," that is, the Hostile Work Environment claim. Ms. Lively argues that this 25% reduction was improper because all of her claims revolved around a common core of facts. Indeed, citing *Goos*

*v. Nat'l Ass'n of Realtors,* 314 U.S.App. D.C. 329, 68 F.3d 1380 (1995), she asserts that the trial court *had no discretion* to reduce her award of attorneys' fees on the grounds of her limited success, because the claims on which she did not prevail were related to her successful claim. We first address Ms. Lively's reliance on *Goos.*

■ In *Goos,* a divided panel of the District of Columbia Circuit at least appeared to suggest that failure to succeed on "related" claims is not a sufficient reason to reduce attorneys' fees. The subsequent history of that case, however, squarely undermines the principle for which Ms. Lively has cited it. In denying a petition for rehearing or rehearing en

776 (11th Cir.1994) (original opinion withdrawn and replaced by opinion which does not discuss fee enhancement in terms of current rates and experience levels); *Bratcher, supra,* 8 F.3d at 726 (affirming award "intended to reflect current rates and thus account for the delay in payment," but making no mention of experience levels); *Gates, supra,* 987 F.2d at 1406 (affirming award of "fees at current rather than historic rates" but making no mention of experience levels); *Keenan v. City of Philadelphia,* 983 F.2d 459, 479 n. 18 (3d Cir.1992) ("There are, however, problems in using the current rates .... [for example, T]he current rates for *any individual attorney* may reflect other factors than the passage of time, such as an increase in skill." (emphasis added)); *Grant v. Martinez,* 973 F.2d 96 (2d Cir.1992) (holding that "a district court has the latitude to ... calculate all hours at whatever rate is necessary to compensate counsel for delay"); *Lightfoot v. Walker,* 826 F.2d 516, 523–25 (7th Cir.1987) (discussing the use of "current rates" separately from the discussion of the attorneys' "experience and reputation," and making no reference to historic versus current experience levels); *Save Our Cumberland Mountains, Inc., v. Hodel,* 263 U.S.App. D.C. 409, 416, 826 F.2d 43, 50 (1987), *vacated in part,* 273 U.S.App. D.C. 78, 857 F.2d 1516 (1988) (en banc) (holding that historic rates must be used against the government because sovereign immunity prohibits awards of interest,

making no mention of experience levels); *Murray, supra,* 239 U.S.App. D.C. at 274, 741 F.2d at 1433 (authorizing use of "current market rates of the relevant legal community," but making no mention of experience levels); *In re AOL Time Warner, Inc. Secs.,* 2006 WL 3057232, at *25–26 (S.D.N.Y. Oct.25, 2006) (awarding fees at "current hourly rates" with no discussion of experience level); *Does v. District of Columbia,* 448 F.Supp.2d 137, 141–42 (D.D.C.2006) (affirming use of the 2005 *Laffey* Matrix rates instead of the historic rates; experience levels not discussed); *Pleasants v. Ridge,* 424 F.Supp.2d 67, 71 n. 2 (D.D.C.2006) (noting that the most current yearly *Laffey* Matrix is used, but making no mention of experience levels); *Muldrow v. Re–Direct, Inc.,* 397 F.Supp.2d 1, 4 n. 4 (D.D.C.2005) (awarding current *Laffey* rates without mentioning experience levels); *In re HPL Techs., Inc. Secs. Litig.,* 366 F.Supp.2d 912, 919–20 (N.D.Cal.2005) (awarding fees reflecting current rates and current experience levels in litigation that was not "greatly prolonged"); *Potts v. Hamilton,* 2005 WL 1490445, at *1–2 (E.D.Cal. June 17, 2005) (awarding a fee based on historic rates, while noting that "current rates" have been awarded in extended civil rights litigation). We emphasize that although the trial court awarded Ms. Lively fees reflecting historic experience levels, the award reflected current billing rates from the 2005 *Laffey* Matrix. Therefore, none of these cases are at odds with our ruling in this opinion.

banc, the court clarified its holding and explained that it had merely required the trial court to consider the overall degree of success of the litigation before reducing the requested fees because of a loss on one claim. *Goos v. Nat'l Ass'n of Realtors,* 315 U.S.App. D.C. 397, 74 F.3d 300 (1996). It is therefore clear that Ms. Lively's interpretation of *Goos* is no longer binding even in the District of Columbia Circuit, and in any event we decline to adopt such a rigid rule in this court. Rather we conclude that this is a matter to be decided on a case-by-case basis. Thus, we turn to the issue of whether a reduction was improper because all of Ms. Lively's claims revolved around a common core of facts, as she asserts.

While we acknowledge that all of Ms. Lively's claims arose from her employment with FPA, it is not clear how much they actually overlapped. Indeed, Ms. Lively concedes that the Equal Pay Act claim did not overlap with the others, and represents that hours billed to that claim were redacted. The fact that a certain number of hours could clearly be linked solely to the Equal Pay Act claim, however, does not by itself sufficiently link the remaining hours to the Hostile Work Environment claim, and Ms. Lively provides us little explanation for why that would necessarily be.[11] Moreover, her inability to demonstrate that there was sufficient evidence to overcome a JNOV after jury verdicts in her favor on all of the three claims other than the Hostile Work Environment claim is clearly troubling.

■ We easily conclude that Ms. Lively's success on only one of the four counts sent to the jury—or 25% of her claims— does not in itself require a reduction in her attorneys' fees by 75%, nor did the trial

court do so. As the Supreme Court stated in *Hensley:*

> We agree with the District Court's rejection of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.

*Hensley, supra,* 461 U.S. at 435 n. 11, 103 S.Ct. 1933 (citation omitted). *Hensley* acknowledged, however, that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436, 103 S.Ct. 1933; *see also Shore v. Groom Law Group,* 877 A.2d 86, 92–93 (D.C.2005) (affirming denial of attorneys' fees to plaintiff who succeeded in one out of eight claims). We are in agreement with that analysis.

■ Ms. Lively further argues that the trial court reached the 25% figure without examination of the billing records she submitted in support of her fee petition. She presumes that no examination occurred because the trial court stated in its order that "[i]t is almost impossible to review in any kind of principled manner the voluminous time records submitted by plaintiff." Leaving aside the question of whether the trial court reviewed the records, however,

---

**11.** It would have been interesting to know, for example, whether the jury was instructed that they could take the employer's actions relating to the Retaliation and Intentional Infliction of Emotional Distress claims into account in determining whether she had prevailed on her claim of a Hostile Work Environment.

we note that the Supreme Court has recognized that "the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley, supra,* 461 U.S. at 436–37, 103 S.Ct. 1933. The trial court was therefore not required to perform an in-depth analysis of the billing records, and our review of the trial court's decision must reflect that "it 'is not for the [trial] court to justify each dollar or hour deducted from the total submitted by counsel ... [but] counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero." *Bratcher, supra,* 8 F.3d at 725 (quoting *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1210 (10th Cir.1986)) (alterations in *Bratcher*).

■ Here, the trial court has provided no in-depth explanation of how it reached the conclusion that 25% appropriately reflected Ms. Lively's lack of success. Rather, the order simply cited *Jackson v. Byrd,* 2004 WL 3249692 (D.C.Super.Ct. Sept. 2, 2004), another case in which a trial court had reduced fees by 25% where the plaintiff alleged four counts based on similar facts, but was successful on only one count. Nonetheless, "in cases where a voluminous fee application is filed, in exercising its billing judgment the [trial] court is not required to set forth an hour-by-hour analysis of the fee request." *Gates, supra,* 987 F.2d at 1399. Instead, "when faced with a massive fee application the [trial] court has the authority to make across-the-board percentage cuts ... 'as a practical means of trimming the fat from a fee application.'" *Id.* (quoting *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983)).[12]

Where, as here, the judge addressing the fee petition is the same judge who conducted the pre-trial conference and presided over the trial of the case, substantial deference is owed on the issue of relative success of the litigation and the overlapping nature of the claims. *See Hensley, supra,* 461 U.S. at 437, 103 S.Ct. 1933. Moreover, it is clear that the trial court did not simply take a mathematical approach. Were that the case, a reduction of more than 25% would likely have resulted. Thus, we are satisfied that the trial court's decision to reduce the attorneys' fees awarded by 25% after considering the overall success on the merits was within its discretion.

## C. Unreliable Billing Records

■ The trial court also reduced Ms. Lively's attorneys' fee request by an additional 8% on the grounds that the billing records were unreliable. The sole evidence of this unreliability cited by the trial court is a single settlement negotiation letter dated February 12, 2004, that was written by Ms. Lively's counsel to FPA's counsel in an effort to reach a settlement of all matters still outstanding, including the payment of attorneys' fees. In this letter, Ms. Lively's counsel estimated that the total attorneys' fees logged up to that date were $809,000.00. In the petition for attorneys' fees, however, which was filed on October 3, 2005, Ms. Lively's counsel sought fees in the amount of $1,179,481.50. The trial court found that such an increase, amounting to $370,481.50, could not have resulted from the minimal litigation of the intervening months. Thus, it was apparently on that basis alone that the trial court concluded that the billing rec-

---

**12.** Regardless of whether the trial court was required to review the billing records, we conclude that any review of the records would have been fruitless. The billing statements refer only to vague tasks such as mem-

os, depositions, telephone calls, meetings, and research. Based on these records, there is no way to determine which billing lines pertain to the Hostile Work Environment claim.

ords of Ms. Lively's counsel were unreliable and made the 8% deduction from the fees requested.

Ms. Lively's counsel now argues that the trial court should not have taken into account the information in the settlement letter.[13] We agree and conclude that the trial court abused its discretion in reducing the attorneys' fees award by 8% based upon a statement made in a settlement letter.

As a matter of evidentiary admissibility, our case law provides, as does FED.R.EVID. 408(a)(1), that as a general rule, statements and admissions made by a party during the course of settlement negotiations are not admissible at trial. The purpose behind the rule precluding such statements and admissions made during settlement negotiations is "to encourage unfettered dialogue in negotiations, so as to further the underlying policy favoring out-of-court settlement of disputes." *Wayne Insulation Co. v. Hex Corp.,* 534 A.2d 1279, 1281 (D.C.1987); *see also* FED. R.EVID. 408(a)(1). The Advisory Committee Notes to Fed.R.Evid. 408 further clarify the policies behind this rule. The Notes, citing MCCORMICK, EVIDENCE §§ 76, 251 (1954), point out that such evidence "is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position." Moreover, the Notes add, "a more consistently impressive ground [for exclusion of this evidence] is promotion of the public policy favoring the compromise and settlement of disputes."[14] We believe that these two reasons provide strong support for the conclusion that a trial court should not, any more than a jury should, use the information provided in settlement letters for the purpose of determining what is an appropriate resolution of a matter.[15] Accordingly, we direct a re-calculation of the attorneys' fees owed to reinstate $82,363.24 back into the total award (representing 8% of $1,029,540.50).

### D. Supplemental Fees

Ms. Lively also claims the right to attorneys' fees associated with the filing of her petition for attorneys' fees. Her original petition for fees and costs makes a clear assertion of her right to be compensated for these fees, and that right is certainly well supported. *See, e.g., General Fed'n of Women's Clubs v. Iron Gate Inn, Inc.,* 537 A.2d 1123, 1129–30 (D.C. 1988); *Envtl. Defense Fund v. EPA,* 217 U.S.App. D.C. 189, 209, 672 F.2d 42, 62 (1982); *Copeland, supra,* 205 U.S.App.

13. Ms. Lively further represents that the discrepancy between the $809,000 figure and the later request for $1,179,481.50 resulted from the fact that in their effort to achieve a settlement of all pending matters, the firm calculated their attorneys' fees at a below market rate. Because of our resolution of the issue of the disclosure of the settlement discussions, we need not address this separate issue.

14. We note that an exception to this policy is found in Super. Ct. Civ. R. 68, permitting disclosure of an offer made by a defending party (here FPA and Braswell-not Ms. Lively) to the adverse party "to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued."

15. FPA argues that Ms. Lively "placed the settlement negotiations at issue in her petition for fees, and thereby opened the door to FPA to rebut her characterization of the negotiations." We have examined the portions of the records that FPA relies on for its claim that Ms. Lively "opened the door" to FPA's disclosure of the representations concerning the amount of attorneys' fees claimed in the letter and find this argument without merit. The portions of the record cited do no more than accuse FPA in general terms of "mak[ing] this litigation as complex and expensive as possible," and thus "forc[ing] Plaintiff to incur substantial attorneys' fees," and point out that a settlement offer made by Ms. Lively was rejected by FPA.

D.C. at 406, 641 F.2d at 896; *Cobell v. Norton,* 231 F.Supp.2d 295, 307 (D.D.C. 2002). The petition, however, failed to indicate that the figure submitted to the court did not include hours billed in preparing the petition, or an estimate thereof. The first mention that these supplemental fees were excluded from the original calculation occurs in footnote three of Ms. Lively's reply to the appellees' oppositions to the petition, which was filed the same day the trial court issued its decision.

Ms. Lively argues that the trial court's failure to address these fees in its order constitutes a denial of these fees. We disagree. Ms. Lively filed a supplement to her petition which fully explained the situation to the trial court the same day she filed this appeal. We therefore decline to rule on this issue before the trial court has the opportunity to make its ruling on Ms. Lively's supplemental petition. *See New 3145 Deauville, L.L.C. v. First Am. Title Ins. Co.,* 881 A.2d 624, 630 (D.C.2005) (holding that "the preferable course of action is to permit the trial court to address in the first instance these further arguments").

## II. Interest on Compensatory Damages

██ Ms. Lively also asserts that the trial court abused its discretion in denying her interest after October 17, 2005, on the compensatory damages owed to her by FPA on her Hostile Work Environment claim. This ruling was grounded in a letter sent to Ms. Lively's counsel on October 17, 2005, wherein FPA requested "instructions on how the check is to be styled and ... a tax identification number or social security number" for Ms. Lively. It further stated that "[s]hould the court rule in your favor on the question whether interest accrues on a punitive damages award, we can write your client a second check at that time."

Ms. Lively's counsel replied that "accepting partial payment at this time poses substantial risks to Plaintiff," and proposed that FPA draft a stipulation addressing potential risks that such acceptance might pose to Ms. Lively's remaining claims. The next day, FPA's counsel sent a letter which stated that such a stipulation was unnecessary. In an email dated October 25, 2005, Ms. Lively's counsel nonetheless sent FPA's counsel a proposed stipulation that appears to suggest that the concern of Ms. Lively's counsel pertained to the outstanding issues of costs, interest and attorney's fees. FPA did not agree with the stipulation and thus made no further offer to pay the compensatory damages at that time.

Although we have not had occasion to address the issue of whether a party can stop the accrual of interest on an award of damages by offering to pay the damages in full, other jurisdictions that have done so have held that an unconditional offer to make partial payment stops interest from running on the amount offered. *E.g., Welch v. McClure,* 123 Ariz. 161, 598 P.2d 980, 984–85 (1979); *Certified Corp. v. Market Ctr., Ltd.,* 51 Haw. 121, 452 P.2d 442, 443 (1969); *Packard v. Joint Sch. Dist. No. 171,* 104 Idaho 604, 661 P.2d 770, 780 (Ct.App.1983). To hold otherwise would allow rate-shopping; that is, plaintiffs could refuse partial payment because court-ordered interest rates are higher than market interest rates, or defendants could be encouraged to drag their feet in paying to benefit from the current high rate of interest they are receiving on the money.

Ms. Lively argues that the offer was not unconditional. We disagree. It was Ms. Lively who insisted on conditions for the offer; FPA merely asked to whom the check should be written. Ms. Lively insists that accepting the payment without

the stipulation could be interpreted as waiver of her rights to the amounts still in dispute, yet she fails to provide us with a single case where this has been a problem.[16] Moreover, she could have done her own letter, indicating that she was accepting it without prejudice to any other specific claims she might have. Thus, we affirm the trial court's decision to deny interest accumulated after October 17, 2005.

## III. INTEREST ON PUNITIVE DAMAGES

■ The trial court also denied Ms. Lively interest on her punitive damages, reasoning that the purpose of punitive damages is to punish the defendant, not compensate the plaintiff. Ms. Lively, however, argues that she is entitled to interest from the date of the entry of judgment, June 21, 1996, and we agree.

■ "The twofold purpose of punitive damages is 'to punish unlawful conduct and to deter its repetition.'" *Chatman v. Lawlor*, 831 A.2d 395, 402 (D.C.2003) (quoting *Daka, Inc. v. Breiner*, 711 A.2d 86, 98 (D.C.1998)). Appellees argue that interest is unnecessary because Ms. Lively has no right to earn interest on money that is not intended to compensate her.[17] The trial court, however, must award in-

terest because *FPA and the Braswell Estate* do not have the right to earn interest on the funds. To hold otherwise would create a perverse incentive for similarly situated appellees to prolong the litigation to forestall payment of the punitive damages.[18] We need not worry about an interest award creating a windfall for Ms. Lively, because the punitive damages themselves are a windfall by their very nature. *Lukhard v. Reed*, 481 U.S. 368, 389, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987) ("Punitive damages, in the exceptional case in which they are awarded, are a windfall to the plaintiff rather than compensation."). Statutory authority for postjudgment interest on punitive damages can be found in D.C.Code § 15–109 (2001), which states that "[i]n an action to recover damages for a wrong the judgment for the plaintiff shall bear interest." Other courts have awarded postjudgment interest on punitive damages, following similar reasoning and interpreting similar language. *See, e.g., Brown v. Petrolite Corp.*, 965 F.2d 38, 51 (5th Cir.1992); *Bank South Leasing, Inc. v. Williams*, 778 F.2d 704, 706 (11th Cir.1985); *Life Ins. Co. v. Johnson*, 725 So.2d 934, 942–43 (Ala.1998); *Pauley v. Gilbert*, 206 W.Va. 114, 522 S.E.2d 208, 215–16 (1999).

**16.** Ms. Lively does not argue, nor could she, that acceptance of FPA's check would extinguish her claims to interest and attorneys' fees under the principles of accord and satisfaction. "This is not a breach of contract case; hence the concept of accord and satisfaction is irrelevant." *Eagle Maint. Servs., Inc. v. District of Columbia Contract Appeals Bd.*, 893 A.2d 569, 582 (D.C.2006). Even if the doctrine were applied, FPA did not "clearly express[] the intention that [the check was] sent as a payment in full, and not on account or in part payment"; in fact, FPA clearly expressed that other matters remained in dispute. *So v. 514 10th St. Assocs.*, 834 A.2d 910, 912 (D.C.2003); *accord, Saul Subsidiary II Ltd. P'ship v. Venator Group Specialty, Inc.*, 830 A.2d 854, 864–65 (D.C.2003);

*Pierola v. Moschonas*, 687 A.2d 942, 947 (D.C. 1997).

**17.** FPA also argues that we are bound by the ruling in *Riss & Co. v. Feldman*, 79 A.2d 566, 571 (D.C.1951). We disagree. We read this case merely to require that any interest on punitive damages be "included when deciding whether a case is within the $3,000 jurisdictional limit of the Municipal Court." *Id.*

**18.** In this case, we realize that FPA attempted to pay the principal of the punitive damages, in the October 17, 2005 letter, before the litigation concluded. We must, however, consider how the similarly situated party would act.

Nor are we persuaded by appellees' alternative argument that interest on punitive damages should not begin to run until they were remitted in 2005. Both the punitive damages and the compensatory damages were set aside by the same post-trial JNOV, but were reinstated on appeal. The en banc court reinstated the compensatory damages related to the Hostile Work Environment claim along with the original full award of punitive damages, directing the trial court "to remit the excess portion." *Lively II, supra,* 830 A.2d at 896. We therefore conclude that Ms. Lively is entitled to interest on her punitive damages award, running from the date of the entry of judgment.[19]

## IV. CONCLUSION

We affirm the trial court's reduction of the requested fee amount reflecting historic experience levels and limited success on the merits, and we affirm the trial court's ruling with respect to interest on compensatory damages. We reverse and remand with respect to the trial court's reduction of attorneys' fees reflecting unreliable billing records, as well as the trial court's ruling with respect to interest on punitive damages. Finally, we make no ruling on the issue of supplemental fees, on which the trial court has yet to rule.

*So ordered.*

---

**19.** We note that interest on the punitive damages owed by FPA should run only until October 17, 2005, the date on which FPA made an offer to pay the principal in full. We have been presented with no record of such an offer made with respect to the punitive damages owed by the Braswell Estate, and interest on that amount should therefore continue to run.