**Donald M. FITZPATRICK,**
**Plaintiff-Appellant,**

v.

**The INTERNAL REVENUE SERVICE,**
**Defendant-Appellee.**

**No. 80–9070.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 7, 1982.

William L. Harper, U. S. Atty., Atlanta, Ga., Michael J. Salem, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Joyce F. Glucksman, Steven P. Flig, Lawrence K. G. Poole, William W. Harness, Atlanta, Ga., for plaintiff-appellant.

M. Carr Ferguson, Asst. Atty. Gen., John F. Murray, Acting Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Michael L. Paup, Chief Appellate Section, Richard W. Perkins, Helen M. Marinak, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before MORGAN, HILL and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant Donald M. Fitzpatrick appeals from a district court judgment granting him the statutory minimum $1,000 damages for injuries from violations of the Privacy Act, 5 U.S.C. § 552a, and awarding $3,000 of a requested $19,700 in attorneys' fees. Appellant contends that the district court erred in not granting him damages for proven mental injuries resulting from illegal disclosures of personal information, and abused its discretion in reducing his requested attorneys' fees without adequate explanation. Because we hold that damages under the Privacy Act are recoverable only for proven out-of-pocket losses, we affirm that part of the judgment granting appellant the statutory minimum $1,000 in damages. We agree with appellant, however, that the trial court failed to adequately explain the reduction of the requested attorneys' fees and therefore we remand the case to the district court for a more thorough explanation.

## I. Background

Appellant Fitzpatrick brought suit under the Privacy Act for unlawful disclosures concerning his disability discharge from the Internal Revenue Service. As part of his application for disability benefits, appellant completed an IRS form indicating he had been suffering from mental distress. The trial court found that appellant's supervisor was guilty of four acts of willfully disclosing appellant's mental condition in violation of the Act,[1] rendering the IRS liable for damages. These findings are uncontested.

To prove damages, appellant introduced the uncontradicted testimony of a psychiatrist that the disclosures had caused appellant to become paranoid about acquaintances knowing that he had retired because of a mental disability. The psychiatrist further testified that the disclosures had

---

1. The parties stipulated to one act of disclosure; the trial court found that all disclosures were "willful or intentional" within subsection (g)(4) of the Act, thus making the IRS liable for damages.

resulted in appellant becoming deeply depressed and withdrawing from social activities. Appellant also introduced evidence that he had intended to open a tax consulting service after retiring from the IRS, but the disclosures had ruined his ability to attract and deal with clients. The trial court found that the evidence of damages was too speculative to warrant recovery,[2] and awarded appellant the statutory minimum $1,000 damages, plus costs and reasonable attorneys' fees as provided for in the Act. Subsequently, appellant's attorneys submitted detailed affidavits requesting $1,295.46 in litigation expenses and $19,700 in attorneys' fees (394 hours at $50 per hour). Finding the requested fees excessive, the court reduced the award to $3,000, and also disallowed several expense items. This appeal followed.

## II. Damages Under the Privacy Act

The Privacy Act, 5 U.S.C. § 552a(g)(4) states:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

Appellant does not contest the trial court's finding that the evidence as to his future tax consulting service was too speculative to sustain a damage award. Rather, appellant vigorously argues that his evidence of mental injuries was uncontested and that

he therefore suffered damages compensable under the Act.[3] The key issue, therefore, is the meaning of "actual damages" in subsection (g)(4)(A) of the Act. Appellant asserts that "actual damages" is synonymous with general or compensatory damages at common law and that he is entitled to recover for his proven mental injuries. The government, on the other hand, contends that "actual damages" refers to out-of-pocket or pecuniary loss, and because appellant proved no pecuniary losses he is entitled only to the $1,000 statutory minimum damages.

■ This issue is one of first impression. Ordinarily, our first step in construing a statute is to interpret the statutory language in accordance with its "plain meaning." *E. g., United States v. Yeatts*, 639 F.2d 1186, 1189 (5th Cir. 1981).[4] Both parties argue that the court decisions interpreting "actual damages" in other contexts support their interpretation in the context of the Privacy Act. Unlike general, special, and compensatory damages, however, "actual damages" has no consistent legal interpretation. A review of the cases cited by each party indicates only that courts have used "actual damages" in a variety of circumstances, with the interpretation varying with the context of use. *E. g., compare Morvant v. Lumberman's Mutual Casualty Co.*, 429 F.2d 495, 496 (5th Cir. 1970) (using "actual damages" to refer to medical expenses and lost wages) *with Skipper v. South Central Bell Telephone Co.*, 334 So.2d 863, 866 (Ala.1976) ("actual damages" is synonymous with compensatory damages and encompasses all elements of damages except punitive damages).

■ Because "actual damages" has no "plain meaning" in legal lexicon, we must turn to the legislative history and attempt to discern Congressional intent on this is-

---

**2.** Although the damages order is somewhat ambiguous, apparently the trial court did not even consider appellant's mental injuries as a basis for damages recovery.

**3.** Appellant's damages claim was based solely on his mental injuries. Appellant introduced no evidence of pecuniary losses, such as ex-

penses for psychiatric care, stemming from the disclosures.

**4.** The Eleventh Circuit, in the en banc case *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) adopted as precedent the decisions of the former Fifth Circuit.

sue. *See United States v. Noe*, 634 F.2d 860, 861 (5th Cir. 1981). Again both parties vigorously assert that the legislative history supports their position. Our independent review of this history, however, has revealed several points which we find militate in favor of the government's interpretation of "actual damages."

First and most important, the evolution and structure of the damage provisions indicate Congressional intent to restrict damage liability to a maximum consistent with private enforcement of the Act. Throughout the Privacy Act debate, a central concern was the scope of potential government liability for damages. In the House this concern was so strong that the House version of the bill not only limited recovery to "actual damages" but required as a predicate to recovery that the plaintiff prove a disclosure was "willful, arbitrary or capricious." H.R. 16373, 93d Cong., 1st Sess. § 3(g)(3) (1974) *reprinted in* Joint Committee on Government Operations, The Legislative History of the Privacy Act of 1974: Sourcebook on Privacy 288 (Joint Comm. Print 1976) [hereinafter cited as *Sourcebook*]. The Senate, on the other hand, initially was far more generous: the original version of S. 3418 provided for punitive damages if appropriate and predicated recovery upon a showing of only negligence. S. 3418, 93d Cong., 2d Sess., § 303(C) (1974) *reprinted in Sourcebook* at 27. After much debate, the "punitive damages" language was deleted in favor of a provision for "actual and general damages." *Sourcebook* at 371. The final version of the Act was a compromise between the House and Senate bills; it reduced the standard of proof from "willful, arbitrary, or capricious" to "willful or intentional," but in an obvious quid pro quo dropped the general damages provision of the Senate bill. To avoid a situation in which persons suffering injury had no provable damages and hence no incentive to sue, a $1,000 damage floor was added, and costs and attorneys' fees were included as additional elements of recovery.

The evolution and structure of the Privacy Act damages provisions, therefore, indicate that Congress expressly rejected liability for general damages in favor of the more restrictive "actual damages." Viewed in this light, "actual damages" as used in the Act cannot be synonymous with common law general damages, and must refer to pecuniary loss. This conclusion is strongly supported by the remarks of Senator Ervin, the chief architect of S. 3418, on the final compromise bill. The final version of the Privacy Act included a provision for a Privacy Protection Study Commission to study the new Act and make recommendations for changes to Congress.[5] Privacy Act, Pub.L.No.93–579, 88 Stat. 1896, 93d Cong., 2d Sess., § 5 (1974). In discussing the powers of this Commission, Senator Ervin noted:

> The scope of the Commission's study authority is outlined specifically within the legislation. In subsection (C)(2)(b), the commission is directed to examine certain issues *which are not included* in the compromise between the House and Senate bill [sic], *such as . . . a question of whether the federal government should be liable for general damages* occurring from a willful or intentional violation of the provisions of (g)(1)(C) or (D), of this act. . . .

120 Cong.Rec. 40405 (1974) (remarks of Sen. Ervin) (emphasis added), *reprinted in Sourcebook* at 859.

This Commission, moreover, concluded that:

> Traditionally, damages have been divided into two classifications, general and special. Compensation for any injury done to an individual is available under a claim of general damages. An individual can make claims for losses due to pain and suffering, for example, even though it is impossible to fix a precise dollar

---

**5.** Original versions of the Senate bill had included provisions for a "Privacy Protection Commission" to oversee and enforce the Act. The House bill, however, did not provide for a separate enforcement agency. The compromise bill retained the commission only as a non-permanent study commission to examine certain aspects of the Act and report to Congress.

value to such an injury. Special damages, on the other hand, only compensate for injury that has caused clear economic loss to the individual. The Commission has found that there is no generally accepted definition of "actual damages" in American law, but the Commission has concluded that, within the context of the Act, the term was intended as a synonym for special damages as that term is used in defamation cases.

In addition, special damages in defamation cases are more limited than in other situations; the injuries clearly covered by them are loss of specific business, employment, or promotion opportunities, or other tangible pecuniary benefits. Injuries not provided for are those which may be labeled intangible: namely, loss of reputation, chilling of constitutional rights, or mental suffering (where unaccompanied by other secondary consequences).

The legislative history and language of the Act suggest that Congress meant to restrict recovery to specific pecuniary losses until the Commission could weigh the propriety of extending the standard of recovery.

Personal Privacy in an Information Society: The Report of the Privacy Protection Study Commission 530 (GPO 1977).[6] Although the Commission's conclusions are not binding on this court, they nevertheless are persuasive authority that "actual damages" in the Act encompasses only pecuniary losses.

■ In light of the legislative history's support of a narrow reading of "actual damages," we hold that "actual damages" as used in the Privacy Act permits recovery only for proven pecuniary losses and not for generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries. Because appellant proved only that he suffered a general mental injury from the disclosure, he could not recover beyond the statutory $1,000 minimum damages, costs and reasonable attorneys' fees.[7]

## III. Attorneys' Fees

Pursuant to subsection (g)(4)(B) of the Privacy Act, providing that a successful plaintiff should recovery reasonable attorneys' fees, appellant's attorneys submitted detailed affidavits itemizing 394 hours expended on the case at a rate of $50 per hour for a total of $19,700. The district court, purportedly following the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), concluded that the fees requested were excessive and reduced the award. In its order the court stated:

Although a case should be thoroughly prepared for trial, the court does not believe that such thorough preparation requires the attendance of two attorneys at each of numerous depositions nor at trial. This case was neither novel nor very difficult, and many of the important facts were stipulated. This lack of complexity militates against awarding attorney's fees for the number of hours claimed by the plaintiff's attorneys and is in itself a separate criteria under *Johnson*.

Basically being a tort action, this case did not require special expertise as would be true in anti-trust, truth-in-lending, or admiralty cases.

The plaintiff's attorneys billed their time at $50 per hour, and this court does not believe such fee is excessive in this area. However, it is the number of hours expended and not the hourly rate with which this court has difficulty.

---

**6.** The Commission recommended that the "actual damages" language be discarded and replaced with a provision permitting recovery of special damages plus a maximum $10,000 in general damages. Personal Privacy, *supra*, at 531.

**7.** We note, however, that this holding does not prohibit a Privacy Act plaintiff from recovering for pecuniary losses resulting from a mental injury caused by an unlawful disclosure. If, for example, a disclosure caused a person such humiliation that his continued mental health required him to move his residence, all costs of the move, including any loss sustained in the sale of his current residence, would be compensable. More relevant to the case at hand, had appellant introduced evidence of expenses for psychiatric care necessitated by the disclosure, he could have recovered those expenses.

With respect to the amount of money involved and the results obtained, the court notes that the plaintiff was awarded only the statutorily required minimum damages in the amount of $1,000.00 and not the $50,000.00 which he had sought. Taking into consideration the expertise, reputation, and ability of the attorneys, the court believes that the hourly rate is proper but, again, the court believes that attorneys with the experience and ability of the plaintiff's attorneys should not need to spend the amount of time in this case for which they have billed.

Applying the *Johnson* criteria, the court concludes that the plaintiff should be awarded attorney's fees in the amount of $3,000.00.

Appellants argue that the district court abused its discretion in awarding only 15% of the requested fees, and failed to adequately explain the reasons for the reduction. The government, on the other hand, asserts that the trial court did all it was required to do under *Johnson* and reached a fair fees award.

 *Johnson*, the leading Fifth Circuit case on attorneys' fees awards, delineated twelve factors a court should consider in reaching a proper determination of attorney's fees:

(1) The time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Johnson, supra*, at 717–19. Because a trial court is in a far better position to judge what is a reasonable fee than an appellate court, the trial court enjoys wide discretion in determining a reasonable fee. *E. g.,*

*Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 581 (5th Cir. 1980); *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1298 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). Nevertheless, later cases applying *Johnson* have specified certain procedures a trial court must follow in setting a fee. Chief among these procedures is providing an adequate explanation of "the findings and reasons upon which the award is based, including an indication of how each of the twelve factors in *Johnson* affected his decision." *First Colonial, supra,* at 1300. An adequate explanation of the fee award is absolutely essential to appellate review; without it, review is impossible because no basis exists to judge the trial court's exercise of its discretion. A perfunctory explanation simply will not suffice. "What we require is not a meaningless exercise in parroting and answering each of Johnson's twelve criteria, but some assurance that the court has arrived at a just compensation based upon appropriate standards." *Davis v. Fletcher,* 598 F.2d 469, 470 (5th Cir. 1979).

To insure that a trial court develops a proper basis for a fees award and can adequately explain that award, the *First Colonial* court specified the exact order in which a trial court should consider the *Johnson* factors. First, the court must "ascertain the nature and extent of the services supplied by the attorney." *First Colonial, supra,* at 1299. If the court finds the number of hours excessive, it should identify the hours disallowed and explain why it is disallowing them. If the parties dispute the facts, an evidentiary hearing must be held. Second, the court must determine the value of the services rendered according to the customary charges in the area and the quality of the work produced. Special experience or expertise, or the lack of it, will be reflected in the hourly rate allowed. When the court has finished these two steps and arrived at a nominal fee, it should then consider the remaining *Johnson* factors appropriate to the particular case and briefly articulate how each of these factors affect the final compensation. *Copper Liquor, su-*

*pra,* at 583; *First Colonial, supra,* at 1299–1300. *See Henson v. Columbus Bank and Trust Co.,* 651 F.2d 320, 329 (5th Cir. 1981); *Northcross v. Board of Education,* 611 F.2d 624, 637 (6th Cir. 1979).

 After reviewing the district court order in this case, we conclude that it did not meet our standards of an adequate explanation as developed in *First Colonial, Davis,* and *Copper Liquor.* In *Copper Liquor,* for example, the attorneys requested a fee of $250,000. The trial court made detailed findings of fact concerning each of the *Johnson* factors but failed to explain how each factor affected the final award. Rather, the court merely listed its findings, then concluded that "taking into consideration all the [listed] factors" a $45,000 fee was appropriate. On appeal the Fifth Circuit held that the failure to articulate how each factor affected the fee award rendered the explanation inadequate. *Copper Liquor, supra,* at 582–83.

Here the trial court not only failed to explain how the *Johnson* factors affected its award, but also failed to make specific findings·of fact as to the *Johnson* factors. The court, for example, asserted that many of the itemized hours were duplicative but failed to specify which hours it considered unnecessary. The court also found that the case was not novel or complex and resulted in only $1,000 damages [8] but failed to articulate how these findings affected the award. In the absence of a proper explanation of how the court's findings affected its award, review of the award for abuse of discretion is impossible. We would have some difficulty, for example, upholding a trial court's discounting a fee award by 85% solely because the case was not novel or complex unless the lack of complexity resulted in the court disallowing a substantial number of hours billed. The trial court's order here, however, gives us no indication of how many requested hours were disallowed or how much the trial court discounted the award due to the asserted lack of

complexity. Under these circumstances, we must vacate the fee award and remand to the trial court for a new determination of a reasonable fee accompanied by an explanation in accordance with the procedures set forth in this opinion.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

---

8. Although we do not decide whether the court abused its discretion in setting the fee award at $3,000, we question whether any case which presents a significant issue of first impression, as this case has, properly can be described as "not novel."