[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 24, 2012
JOHN LEY
CLERK

_____

No. 10-15616

_____

D. C. Docket No. 4:07-cv-00049-HLM


NORMAN CARPENTER,

Plaintiff-Appellant,

versus

MOHAWK INDUSTRIES, INC.,
JEFFREY BIGGS, et al.,

Defendants-Appellees.


_____

No. 10-15820

_____

D. C. Docket No. 4:07-cv-00049-HLM


NORMAN CARPENTER,

Plaintiff-Appellee,

versus

MOHAWK INDUSTRIES, INC.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(May 24, 2012)

Before EDMONDSON, ANDERSON and FARRIS,[*] Circuit Judges.


PER CURIAM:

This case involves the termination of an employee's employment. A deter-from-testifying claim under 42 U.S.C. § 1985(2) is in controversy.

Plaintiff was fired from his position with Defendant for acts taken, at one of Defendant's facilities, in connection with the potential employment of illegal aliens ineligible for employment. Plaintiff brought this civil action, alleging his termination was part of a conspiracy to intimidate Plaintiff into not testifying in another civil suit filed against Defendant; this other civil action involved claims about Defendant's employment of illegal aliens. With a detailed order, the district court granted summary judgment to Defendant. We affirm the judgment.

_____

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

BACKGROUND

The issues in this case arise against the background of a different civil action: a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") suit ("Williams") filed in 2004 against Defendant Mohawk Industries, Inc. ("Mohawk") by other current and former Mohawk employees. The Williams suit alleged a conspiracy between Mohawk and several temporary employment agencies ("temp agencies") to keep wages low at Mohawk facilities through the use, as temporary workers, of illegal aliens ineligible for employment. The Williams case featured extensive litigation in both the Northern District of Georgia and before this court. See, e.g., Williams v. Mohawk Indus., Inc., 568 F.3d 1350 (11th Cir. 2009); Williams v. Mohawk Indus., Inc., 465 F.3d 1277 (11th Cir. 2006). Williams was settled in 2010.

In 2006, Plaintiff Norman Carpenter ("Plaintiff") was a Shift Supervisor at Mohawk's Union Grove facility. The Union Grove facility was a manufacturing facility that employed large numbers of hourly "blue-collar" workers. During 2006, Plaintiff sent several emails to a Mohawk Senior Employment Coordinator seeking to have certain temporary employees hired as permanent employees at Mohawk or to have certain persons brought on through a temp agency. In several

3

of these emails, the prospective employee's having "good" or "not good" papers was mentioned by Plaintiff. In the email to the Mohawk Senior Employment Coordinator that eventually led to Plaintiff's termination, Plaintiff wrote these words:

> "90% of the people that come through the temp do not have good papers thats [sic] why they come to us that way I can tell you that most of the people working today here through a temp do not have one of two things either a GA I.d. [sic] or good papers through the I.N.S. Thanks Norman." ("90% email").

This email triggered a Mohawk internal investigation. Mohawk's General Counsel contacted outside counsel Juan Morillo -- then lead counsel in the pending Williams case -- to provide legal advice about the 90% email. Morillo interviewed Plaintiff and several other people over two days. Morillo's interview of Plaintiff was brief and was conducted on the first day of interviewing. During the interview, Plaintiff was asked if he had heard of the Williams case; Plaintiff said he had not. No other mention was made of the Williams case in the interview. The focus of the interview was on the 90% email and repeated questions were asked on how Plaintiff came to reach his 90% estimate for Plaintiff's email.

Soon after the interviews were completed on the second day, Plaintiff was terminated as a Mohawk employee at a meeting attended by a senior member of the Mohawk Human Resources ("H.R.") team, Plaintiff's supervisor, and a

4

Mohawk executive.  The H.R. team member was the sole Mohawk speaker at the termination meeting and explained to Plaintiff that he was being terminated for knowingly employing illegal immigrants and for illegally screening employees.

Before long, Plaintiff filed this civil action against Mohawk.  Then, the Williams-suit plaintiffs quickly became aware of Plaintiff's case, made some efforts to contact Plaintiff, and used the 90% email in their efforts at class certification in Williams.  The Williams matter settled. And, in fact, no one ever asked Plaintiff to testify in Williams; and he never received a subpoena in connection with Williams. Shortly after the Williams settlement, the district court granted summary judgment to Mohawk on all of Plaintiff's claims in this case.

## STANDARD OF REVIEW

We review a grant of summary judgment de novo. Fanin v. U.S. Dept. of Veterans Affairs, 572 F.3d 868, 871 (11th Cir. 2009). Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law: as when a party fails to show sufficiently the existence of an essential element of their claim, when they bear the burden of proof on that element.  See Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).

5

DISCUSSION

Section 1985(2) prohibits -- in pertinent part -- any conspiracy "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully[.]" 42 U.S.C. § 1985(2).

The thesis of Plaintiff's claim is that Mohawk's lawyers and H.R. personnel conspired to deter Plaintiff from testifying in the Williams case. Plaintiff contends that the atmosphere in his meeting with Mohawk's lawyer Morillo and Morillo's repeated questioning of the 90% estimate in the meeting were an attempt to get Plaintiff to recant the statements made in his email. Plaintiff also contends that his termination carried the implied threat that Mohawk would publicly disclose Plaintiff's "illegal" employment acts if Plaintiff attempted to testify in the Williams case.

To prevail on a deterrence-based claim under section 1985(2), a plaintiff must show three elements: (1) a conspiracy between two or more persons; (2) that the conspiracy was to deter a party or witness by force, intimidation, or threat from attending federal court proceedings or testifying freely in a pending federal matter; (3) that the conspiracy to deter resulted in injury to the plaintiff. See 42 U.S.C. §

6

1985(2); <u>Wagner v. Daewoo Heavy Indus. America Corp.</u>, 289 F.3d 1268, 1271 (11th Cir. 2002) (vacated on other grounds).  The evidence in the record supports no deterrence claim.  For one thing, the evidence is insufficient to establish the second required element: that any force, intimidation, or threat was made by Mohawk in an effort to deter Plaintiff's involvement in the <u>Williams</u> case.

This case is based on statements made in two meetings -- Plaintiff's interview with Morillo and the meeting at Plaintiff's termination -- and the fact of his employment having been terminated; no deterring conduct before or after these meetings is alleged.  This record is too thin.  The evidence in the record about these meetings and the termination is insufficient to show that Mohawk used force, intimidation, or threat to deter Plaintiff's involvement in the <u>Williams</u> case. We have written about this firing-to-deter idea before:

> "One cannot reasonably infer that, simply by making false allegations against Plaintiff and by firing Plaintiff from his job -- before he was to testify -- Defendants had entered into a conspiracy to deter (that is, to discourage or to frighten) him from testifying.  It is not to be expected that a group of conspirators would act to deter someone from testifying by just cutting off, in advance of his planned testimony, the most significant source of influence that the conspirators have over that person: his job.  Firing someone from their job, amid false allegations of wrongdoing, seems as though it, by itself, would likely create animosity towards a former employer, thereby *encouraging* -- not deterring -- that fired employee's testimony against the company."

7

<u>Wagner</u>, 289 F.3d at 1271-72 (emphasis in original).

Plaintiff first became aware of the <u>Williams</u> case in his interview with the lawyer Morillo the day before the termination meeting; and  -- excluding the one mention of the <u>Williams</u> case by Morillo that first informed Plaintiff that the <u>Williams</u> case existed -- the <u>Williams</u> matter was never again mentioned during the Morillo interview or the termination meeting.  While threats and intimidation can be implied or conveyed without being explicitly stated, the record evidence must include some indication -- beyond some straining "maybe, just maybe" speculation -- that Defendant's activities were aimed at Plaintiff's not testifying in the <u>Williams</u> case.  This record will not allow inferences of intimidation where Plaintiff's present or potential involvement in the <u>Williams</u> case were never referred to by Defendant's agents. Absent some more evidence, for example, that Mohawk had made earlier efforts to prevent Plaintiff from testifying in the <u>Williams</u> case and that the termination and related statements were an escalation of these earlier attempts at dissuasion, the evidence is insufficient to allow a finding that an effort at deterrence through "force, intimidation, or threat" was actually made here.

CONCLUSION

The district court wrote several detailed orders in this case. We see no reversible error in them.

Plaintiff's deterrence-based section 1985(2) claim fails because the evidence in the record is insufficient to establish an essential element of the claim. We therefore conclude no genuine issue of material fact exists.

The pertinent decisions and judgment of the district court are affirmed entirely.

AFFIRMED.