[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10734

_____

D. C. Docket No. 2:10-cv-00191-WCO

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

Plaintiff-Counter
Defendant-Appellee,

versus

JEFF HASLUP,
JANICE HASLUP,
Surviving Parents of Stephanie Diane Hart,

Defendants-Counter-
Claimants-Appellants,

JONATHAN HART,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 20, 2012)

Before DUBINA, Chief Judge, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

This is a declaratory action filed by Appellee Allstate Property and Casualty Insurance Company ("Allstate") seeking a declaration with respect to its obligations to defend and provide coverage under a homeowner's policy ("the Policy") naming Jonathan Hart ("Jonathan") and Stephanie Hart ("Stephanie") as insureds. Appellants Jeff and Janice Haslup ("the Haslups") appeal the district court's order granting summary judgment in favor of Allstate. We affirm, but on different grounds.

I.

On July 26, 2008, Jonathan shot and killed his estranged wife Stephanie. Thereafter, Jonathan was convicted in Georgia Superior Court of felony murder, aggravated assault, and possession of a firearm during the commission of a felony. Jonathan was sentenced to life in prison. Stephanie's parents, the Haslups, subsequently filed a wrongful death action against Jonathan in Georgia Superior Court. Prior to the resolution of the wrongful death action, Allstate filed the current declaratory action in the Northern District of Georgia, naming the Haslups and Jonathan as parties.[1]

---

[1] The wrongful death action is still pending.

2

Jonathan testified at his criminal trial that he accidentally shot and killed Stephanie, when, at his invitation, she came to his residence to sign divorce papers. Allstate contends that the Policy's intentional acts exclusion applies and relieves it from providing coverage. The Haslups argue that Jonathan killed Stephanie accidentally and that the intentional acts exclusion does not apply. Both sides seek a declaration confirming their respective positions. The Policy's intentional acts exclusion provides:

> We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional act or acts or omissions of, any insured person, which are crimes pursuant to the Georgia Criminal Code.

The district court did not reach the issue of whether the intentional acts exclusion applies, however, because it found that the Haslups were not parties to the Policy and therefore lacked standing to contest coverage thereunder.[2]

II.

---

[2] Applying Georgia law, the district court concluded that the Haslups did not have standing in this declaratory action. We disagree. This case is controlled by *St. Paul & Marine Insurance Co. v. Johnson*, 216 Ga. 437, 117 S.E.2d 459 (1960). In *St. Paul*, the Georgia Supreme Court found that accident victims who filed a lawsuit against an insured would not be bound by a separate declaratory judgment action brought to determine the insurance company's liability when the accident victims were not parties to the declaratory action. Thus, the *St. Paul* court allowed the accident victims to be parties to the declaratory action to ensure a uniform finding of the insurance company's liability in the declaratory action and the underlying lawsuit. Like the accident victims in *St. Paul*, the Haslups would not be bound by Allstate's declaratory judgment action brought against the insured—Jonathan—alone, without being parties thereto. Moreover, Allstate concedes on appeal that the Haslups have standing.

3

We review *de novo* a district court's grant of summary judgment. *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 871 (11th Cir. 2009). "[W]e may affirm the district court's judgment on any grounds supported in the record." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1306 n.2 (11th Cir. 2004).

### III.

We are persuaded that Jonathan's intentional acts exclude him from coverage. As noted above, the exclusion provides in relevant part: "We do not cover any bodily injury . . . *intended by*, or which may reasonably be expected to result from the intentional act or acts [of the insured.]" The Georgia Court of Appeals has held that while the "intended by" language of this exclusion requires subjective intent, injury "which may reasonably be expected to result" is not measured by the subjective intent of the insured. *Tripp v. Allstate Ins. Co.*, 262 Ga. App. 93, 96, 584 S.E.2d 692, 695 (2003). Rather, an objective test—what a reasonable person would expect—is used. *Id.* The following facts persuade us that Jonathan's actions triggered the intentional acts exclusion at issue in this case. In other words, we are persuaded that "a reasonable person in [Jonathan's] circumstances may expect bodily injury to result" from his intentional actions. *Id*.

On the date of Stephanie's shooting, Jonathan left work early, stopped at a gas station, and bought a 12-pack of beer. He then stopped at his mother's house

4

and picked up a 40-caliber carbine rifle and bullets.  When Jonathan arrived at his house, he cleaned and reloaded the rifle and cocked its firing hammer.  He placed the rifle in his living room on the arm of the couch.  Thereafter, he called Stephanie and asked her to come by and sign divorce papers.  During Stephanie's visit, Jonathan became emotional and started to cry.  At some point, Stephanie walked off down a narrow hallway toward the kitchen to get a beer.  Jonathan picked up his rifle and followed very closely behind Stephanie.  He held the loaded, cocked rifle, which was pointed downward in one hand, and he covered his eyes with the other hand because he was crying.

Jonathan followed Stephanie so closely that, when she stopped, the rifle hit her.  Jonathan testified:  "I had the gun . . . in my hand, when I was close enough to her, which it struck—I don't know if it hit her shoulder or neck or in the head or where . . . ."  [R. 17-6 Tr. of Jonathan Hart's Criminal Trial Test. at 1749.]  He continued:  "When I looked up to see what just happened and where the gun was, I jerked the gun back and said, 'oh, shit,' to get it out of her face because it was pointed directly at her."  [*Id.* at 1750.]  Describing the same moment when the rifle bumped her, he testified:

> She was looking around to see what was happening, and my response, I looked at her about the same time she was coming around looking at me and I said, 'oh shit,' because I realized what just happened and

5

where the gun was.  And when I went to jerk it back and get it away
from her, it went off.

[*Id.* at 1748.]

The facts discussed above are very similar to the facts of *Tripp*.  In both,

insured homeowners were sued for coverage under their respective insurance

policies for a shooting that the insured claimed was accidental.  Moreover, the

intentional acts exclusion at issue in both is identical.[3]  *See Tripp*, 262 Ga. App. at

95, 584 S.E.2d at 694.  In *Tripp*, as in the instant case, the insured-killer claimed

that the gun discharged accidentally and that he lacked subjective intent to harm

anyone.  *Id* at 94, 584 S.E.2d at 694.  In fact, the *Tripp* insured-killer claimed that

he did not even know the gun was loaded.[4]  *Id.*  Despite the claimed lack of

subjective intent on the part of the insured-killer, the Georgia Court of Appeals

held that the trial court properly granted summary judgment and found that the

---

[3] In construing this exclusion, the *Tripp* court noted that the "exclusion relieves the insurer of liability if (1) the insured acted *either* intentionally *or* criminally, and (2) the resulting injuries were *either* intended *or* may reasonably be expected to result from the insured's intentional or criminal acts."  262 Ga. App. at 96, 584 S.E.2d at 695.

[4] It is undisputed that Jonathan knew the rifle was loaded.  Jonathan testified, however, that the "gun simply went off" despite him putting the safety on.  [R. 17-6 Tr. of Jonathan Hart's Criminal Trial Test. at 1783.]  At the summary judgment stage, the court must draw reasonable inferences in favor of the non-movant.  "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'"  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).  Because there is no evidence that the firearm was defective, no reasonable factfinder would find that the firearm's safety was on when Jonathan shot and killed Stephanie.  *See Riley v. City of Montgomery, Ala.*, 104 F.3d 1247, 1251 (11th Cir. 1997) (noting that the "[p]laintiff's theory of the incident is inherently incredible and could not support reasonable inferences sufficient to create an issue of fact").

6

exclusion applied because "a reasonable person in [the insured-killer's] circumstances may expect bodily injury to result from his [intentional and] criminal actions." *Id.* at 96, 584 S.E.2d at 695.   Just like in *Tripp*, here the "bodily injuries and resulting death were the natural, probable and foreseeable consequences of [the insured-killer's] actions as a matter of law." *Id.*

We conclude from the record that the evidence establishes Jonathan's intentional acts and their inevitable consequences caused Stephanie's death. Because Jonathan walked very closely behind Stephanie down a narrow hallway with a cocked and loaded rifle without being careful where he was walking or where the rifle was pointing, we are persuaded that Jonathan's intentional actions were such that a "reasonable person would expect that someone may get hurt in such perilous circumstances." *Tripp*, 262 Ga. App. at 96, 584 S.E.2d at 695.  Thus, we conclude that the intentional acts exclusion applies, and Allstate is relieved of liability to pay under the Policy.

## IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Allstate.

**AFFIRMED**.

7